MANN, Judge.
After an argument with the man she described as her common law husband since December 1968,[1] Jean started walking from Clearwater Beach to the mainland. It was nearly three in the morning. A fellow in a U-Haul van passed by her a few times. He stopped and asked if she wanted a lift. She said “No, thank you.” She lost sight of the van for a while, but when she next saw it it was off the road, headed for her. The van hit her. The driver opened the door to the van and dragged Jean along the ground, opened the side door of the van and pushed her in. He drove for a few minutes, then parked and got into the back of the van, pulled her clothes off. She was crying, hurting. “I knew my arm was broke, and I thought my leg was broke, and I was scared, and I told him that I wouldn’t fight him if he’d just take me to a hospital, and he said okay.” A forcible sexual act followed. Then, “well, he just got done and got out and got back in the truck.”
About this time a chase had begun, triggered by Max Battle, city engineer for the City of Clearwater, who, while crossing the causeway with his son and two other men on their way to fish, spotted the van parked in one of the westbound lanes, headed east. He noticed a woman’s purse and shoe in the road. He got the license number of the vehicle and reported the incident to police while Al Rice, in the car behind Battle, followed the van.
The van was finally overtaken, and Lar-rabee bolted and ran. Though warned of the possibility of being shot and ordered to halt, Larrabee continued running. A humane police officer using muscle rather than his gun, tackled and handcuffed Lar-rabee.
Meanwhile, back at the U-Haul van, Jean’s cries for help were heard. The officers there tried to get in the back door of the van, but it was locked. In a slight departure from the excellent police work throughout, one officer tried to open the locked back door with a crowbar. Another tried the side door, which was open. Jean lay there bruised and swollen. At the hospital a physician confirmed recent sexual intercourse and injuries far more serious than permissible sexual foreplay could account for, even among cavemen.
We are no more able than the trial judge to understand how a jury deadlocked on this case, but they did, and after two tries they couldn’t agree. Some juror or jurors, oblivious to the distinction between force and persuasion, prompted the foreman to ask if “a person can be convicted of rape and yet consent to the act.” The judge declined to amplify the written in *434 structions. The jury again retired, but soon brought another question to the court. They couldn’t agree on any form of verdict submitted, but could agree that Lar-rabee was guilty of assault and battery “with intent to commit sexual intercourse.” No such verdict was entered, but the record is preserved, so Larrabee now contends that the words following “assault and battery” are surplusage and that the verdict should have been received. As a consequence, Larrabee contends that he could not thereafter be tried for rape.
We agree with the trial judge that this case clearly called for declaration of mistrial. A jury which persisted in acting like a legislature was correctly admonished by the trial judge to confine its deliberations to the law as instructed. Upon its obvious inability to reach a verdict it was properly discharged. Fla.R.Crim.P. 1.560, 33 F.S.A. Cf. Fla.R.Crim.P. 1.440.
Larrabee was not “twice put in jeopardy,” and the judgment entered after his second trial is
Affirmed.
PIERCE, C. J., and LILES, J., concur.

. She is mistaken: common law marriages were prohibited in Florida as of January 1, 1968. Fla.Stat. 741.211, F.S.A. (1969).