312 So.2d 785 (1975)
STATE of Florida, Appellant,
v.
Andrew L. HANIGAN, Appellee.
No. 75-23.
District Court of Appeal of Florida, Second District.
May 14, 1975.
*786 Robert L. Shevin, Atty. Gen., Tallahassee, and Mary Jo M. Gallay, Asst. Atty. Gen., Tampa, for appellant.
William C. Gregg, III, Clearwater, for appellee.
GRIMES, Judge.
The state appeals an order dismissing an information which charged appellee with carrying a concealed firearm, in violation of Fla. Stat. § 790.01(2).
From the motion to dismiss and the state's traverse, it was established that the police found a .38 caliber revolver under the front seat of appellee's vehicle. The revolver was in a holster with a leather strap snapped over the hammer. By stipulation of the parties, the trial court examined the revolver and holster. The transcript of the hearing reflects that the revolver could not be fired unless the leather strap over the hammer was released and the revolver removed from the holster.
Subsection (2) of Fla. Stat. § 790.01 provides:
"Whoever shall carry a concealed firearm on or about his person shall be guilty of a felony of the third degree... ."
Subsection (4) specifies that subsection (2) shall not apply to persons licensed as set forth in §§ 790.05 and 790.06. Section 790.05 states that persons, other than law enforcement officers, who desire to carry a pistol must be licensed, and § 790.06 provides the method by which such a license can be procured. There is no suggestion that appellee had a license for his pistol.
At the outset, we have no hesitation in saying that a gun which is located under the driver's seat of an automobile is concealed on or about the person for purposes of the statute. It is in a position where it cannot be readily seen yet it is within the reach of the driver. See Lawson v. State, Fla.App.3d, 1971, 251 So.2d 683. The pivotal point is whether appellee is exonerated by Fla. Stat. § 790.25 which provides in part:
"(1) Declaration of policy.  The legislature finds as a matter of public policy and fact that it is necessary to promote firearms safety and to curb and prevent the use of firearms and other weapons in crime and by incompetent persons without prohibiting the lawful use in defense of life, home, and property, and the use by United States or state military organizations, and as otherwise now authorized by law, including the right to use and own firearms for target practice and marksmanship on target practice ranges or other lawful places, and lawful hunting and other lawful purposes.

*787 * * * * * *
"(2) Lawful uses.  This section shall not authorize carrying a concealed weapon without a permit, as prohibited by § 790.01 and § 790.02. The protections of this section shall not apply to the following:
* * * * * *
"(3) Exceptions.  The provisions of §§ 790.05 and 790.06, shall not apply in the following instances, and despite said sections it shall be lawful for the following persons to own, possess, and lawfully use firearms and other weapons, ammunition, and supplies for lawful purposes:
* * * * * *
(j) A person firing weapons for testing or target practice under safe conditions and in a safe place not prohibited by law, or while going to or from said place;
(k) A person firing weapons in a safe and secure indoor range for testing and target practice;
(l) Any person traveling by private conveyance when the weapon is securely encased, ...
* * * * * *
(n) A person possessing arms at his home or place of business.
"(4) Construction.  This act shall be liberally construed to carry out the declaration of policy herein and in favor of the constitutional right to keep and bear arms for lawful purposes. This act shall be supplemental and additional to existing rights to bear arms now guaranteed by law and decisions of the courts of Florida, and nothing herein shall impair or diminish any of such rights. This act shall supersede any law, ordinance, or regulation in conflict herewith." (emphasis added)
A literal reading of the statute does not necessarily support appellee's position. In the first place, he was charged with violating § 790.01, but the enumeration of permissible activities under § 790.25(3) are said to be exceptions to §§ 790.05 and 790.06. Moreover, § 790.25(2) specifies that the section does not authorize carrying a concealed weapon without a permit as prohibited by § 790.01. Finally, § 790.25(1) refers to a weapon, and the definition of weapon in § 790.001(13) excludes a firearm.
On the other hand, the rationale of previous decisions favors appellee. In Peoples v. State, Fla. 1973, 287 So.2d 63, the police observed petitioner sitting on a bench in front of the store where he worked. The petitioner also resided at the store. A subsequent search of the petitioner revealed a pistol under his shirt. In reversing petitioner's conviction for carrying a concealed firearm, the Supreme Court held that Fla. Stat. § 790.25(3)(n) exempted him from the prohibitions of § 790.01 as well as the licensing requirements of §§ 790.05 and 790.06. The court said at p. 67:
"If we upheld the lower court's verdict, we would be saying that a person, in defense of his home or place of business, is not permitted to conceal his possession of a firearm. This would mean that:
1). An owner of a business, or his employee, could not carry a concealed weapon on or about his person (i.e., on his person, or in a drawer next to the cash register). He would either have to risk a loss of business by offending customers, or give up his only means of self-defense.
2). A homeowner would have to either carry his weapon in his hand or outside holster, or leave said weapon where it would be useless (as in a locked drawer and/or in plain sight).
"The Legislature could not have intended a result so inconsistent with its Declaration of Policy in Section 790.25(1), the Exceptions to said Section in Section 790.25(3)(n), and the Construction in Section 790.25(4)... ."
*788 The Supreme Court in Peoples cited French v. State, Fla.App.4th, 1973, 279 So.2d 317. In French, appellant was in his own home when a pistol was found in his trouser pocket. In reversing appellant's conviction, the Fourth District said it was anomalous to determine that a person exempted from licensing requirements may be convicted for failing to have a license. Under similar circumstances, the First District in Russ v. State, Fla.App.1st, 1974, 304 So.2d 481, reversed appellant's conviction. Finally, this court in Facion v. State, Fla.App.2d, 1974, 290 So.2d 75, recognized the statutory exception, but refused to apply it because appellant was first observed on a public sidewalk. Thus, the courts have interpreted § 790.25(3)(n) as providing an exception to § 790.01 even though subsection (3) only refers to §§ 790.05 and 790.06.
These decisions do not fully answer the point about § 790.25(1) referring only to weapons. However, when § 790.25 is read in its entirety, it becomes obvious that the legislature was using the terms "weapons" and "firearms" interchangeably. For instance, subsection (3) refers to "firearms and other weapons" and paragraphs (j) and (k) permit "firing weapons" for testing and target practice in certain places. (emphasis added.)
The question we are faced with, then, is whether the same rationale which exempts a person in his home from a charge of carrying a concealed firearm also exempts one who carries a concealed firearm in his vehicle, assuming, of course, that the firearm is securely encased. In view of the Declaration and Construction which are made a part of § 790.25, we think it must. There is no logical basis upon which to distinguish paragraphs (l) and (n) of § 790.25(3).
There is justifiable concern over the proliferation of guns in our country today. Yet, many of our law abiding citizens have purchased firearms for their own safety. The legislature might well take another look at Chapter 790 with a view toward clarifying the circumstances in which a person may legally handle firearms and other weapons.
Affirmed.
McNULTY, C.J., and HOBSON, J., concur.