408 So.2d 797 (1982)
Joseph R. CATES, Appellant,
v.
STATE of Florida, Appellee.
No. 81-723.
District Court of Appeal of Florida, Second District.
January 15, 1982.
*798 Gregory H. Fisher, St. Petersburg, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Deborah A. Osmond, Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Acting Chief Judge.
When is a weapon "securely encased" so that it can be legally carried in a private vehicle? The question is easily stated, but the answer is elusive.
The state charged appellant with carrying a concealed firearm in violation of section 790.01(2), Florida Statutes (Supp. 1980). At trial, the evidence showed that Officer Leedy stopped appellant on Interstate 275 in St. Petersburg and arrested him for driving while intoxicated. His automobile was towed to the station where it was impounded. After impoundment, Officer Roche conducted an inventory search during which he found a .45 caliber semiautomatic handgun in the console compartment located between the automobile's front bucket seats. The console had a lift lid which opened toward the driver. Officer Roche testified that at the time he searched the car, the lid was in a closed position but slightly ajar so that he could open it without having to spring the catch. Officer Leedy testified that when he arrested appellant, the console was closed, and he could not see the gun. He stated that he did not see appellant get anything out of the console and did not recall asking him for his registration. He further said that appellant could not have unlocked and opened the console without his noticing it. Appellant testified that the console was locked when the officer stopped him and that as Leedy approached him he unlocked the console to get out his vehicle registration. The jury found appellant guilty as charged.
On appeal, appellant recognizes that under the rationale of Ensor v. State, 403 So.2d 349 (Fla. 1981), his gun was concealed within the meaning of section 790.01. However, he argues that he could not be convicted because his gun was "securely encased" as contemplated by the exception set forth in section 790.25(3)(1), Florida Statutes (1979).[1] He relies primarily on State v. Hanigan, 312 So.2d 785 (Fla. 2d DCA 1975), in which this court held that a revolver in a holster with a leather strap snapped over the hammer which could not be fired until the strap was released and the revolver removed from the holster was securely encased as contemplated by the statute.
What does securely encased mean? The verb encase has been defined to mean, "to enclose in or as if in a case." American Heritage Dictionary of the English Language 429 (New College ed. 1976). The most applicable definition of secure is "a. not likely to fail or give way; stable; strong. b. well fastened." Id. at 1173. In State v. Butler, 325 So.2d 55, 56 (Fla. 3d DCA 1976), the court said in a split decision:
We should examine these grounds in the inverse order because if the weapon is "securely encased," it is exempt and there *799 is no need to determine whether the weapon is in "close proximity of the driver." Encased is simple in meaning. The prefix "en-" means "in." The principal word "case" means an enclosed container. Gun cases are well known articles. We think that we should give to the words of the statute their ordinary meaning and should apply the statute in a straight-forward, literal manner. See Merrill Lynch, Pierce, Fenner & Smith, and Pritchard v. Byrne, Fla.App. 1975, 320 So.2d 436 (released Sept. 23, 1975). We, therefore, hold that a gun placed in an unlocked receptacle which is a part of the automobile is not "securely encased."
Judge Haverfield seemed to place some reliance upon Hanigan in his dissent. He also referred to the Oxford Universal Dictionary's definition of the word encase (or incase) which read, "`... to put into or enclose within a case ... to overlay, surround, hem in; ... to cover, invest... .'" 325 So.2d at 57 n. 1.
Returning to the present case, while the testimony was in conflict, we are required to view the evidence most favorably to the state since appellant was convicted. Applying this criteria, we must assume that the lid of the console containing appellant's pistol was unlocked and ajar. The gun could be retrieved by simply opening the lid and pulling it out. Therefore, under any of the definitions we have examined, we cannot say, as we could in Hanigan, that as a matter of law the gun was securely encased, and so we must affirm the jury's verdict.
Having decided this case on its facts, there is no requirement for us to say anything more. Yet, because there is so much doubt over the circumstances, if any, when a person can lawfully carry a concealed weapon, we feel warranted in making some further observations. It may be, as the court held in State v. Bryant, 373 So.2d 708 (Fla. 3d DCA 1979), that the exceptions of section 790.25(3) only eliminate the need for obtaining a license under sections 790.05 and 790.06, Florida Statutes (1979), and that they are inapplicable to prosecution for carrying a concealed weapon under section 790.01. Accord, State v. Murray, 382 So.2d 1372 (Fla. 4th DCA 1980). However, if this is so, it overlooks the fact that section 790.06 pertains to licenses for carrying concealed pistols and that the appellate courts of Florida have often recognized that the section 790.25(3) exceptions are applicable to section 790.01. Peoples v. State, 287 So.2d 63 (Fla. 1973); Facion v. State, 290 So.2d 75 (Fla. 2d DCA 1974); French v. State, 279 So.2d 317 (Fla. 4th DCA 1973). See Russ v. State, 304 So.2d 481 (Fla. 1st DCA 1974). In addition, if the exceptions do apply, questions remain as to the meaning of securely encased. What if the console containing appellant's gun had been locked? Is a gun in a zippered or partially zippered case securely encased? What about a gun in an unlocked gun case or a wrapped package?
Because of the conflicting emotions which surround the subject, the legislature may be understandably reluctant to venture into a statutory revision involving the regulation of firearms. Yet, the people of Florida deserve to know when and under what circumstances they are entitled to carry guns. As it now reads, chapter 790 is a mass of conflicting rules which seem calculated to ensnare the unwary and to provide little guidance for our law enforcement officers.
AFFIRMED.
SCHOONOVER, J., concurs.
RYDER, J., concurs specially with opinion.
RYDER, Judge, concurring specially.
Not only do I concur in the above opinion, but also voice my special concern relating to the state of the law as it presently reads in chapter 790, Florida Statutes. Over the years, this chapter has often been amended to the point that some sections appear out of tune with others. I am here suggesting that the legislature restore harmony to this important part of the state law. Elements of this chapter present an almost catch-22 situation to the citizenry. It is an area of law where honest citizens can be caught *800 unaware and can be charged with serious crime despite no intention to violate the law. Oft times, a later showing of that lack of intent is costly. It is an area of law where honest citizens are daily left to the arbitrary decisions of the police as to whether or not an arrest will be made. The police prefer certainty as well.
Chapter 790 should receive the full attention and scrutiny of the Florida legislature with a view towards amendment and overhaul so as to give not only the citizenry, but law enforcement, simple and long lasting guidelines as to what is and what is not illegal as it relates to the use, possession, licensing and carrying of firearms.
In addition to the areas of concern discussed above, the interaction, or lack of interaction, between section 790.05 and 790.06 should be addressed. Section 790.05 makes it a crime to unlawfully carry around not only handguns, but also Winchester rifles or other repeating rifles without a permit from the county commission. Section 790.06 permits the county commission to issue permits for the carrying of handguns, but does not speak to the licensing of Winchester rifles or other repeating rifles. A Winchester rifle is a most popular hunting rifle in the United States. Its carbine was made famous as this nation pushed West. Thousands of hunters in Florida possess and carry Winchesters or other repeating rifles around during hunting season and otherwise. I have reservations whether section 790.05, singling out Winchesters, is constitutional. In this regard, the case of Watson v. Stone, 148 Fla. 516, 4 So.2d 700 (1941) is most interesting and instructive; particularly Justice Buford's concurring opinion. There, he traced the history of the section and opined that the section contravened the Constitution and would be nonenforceable if contested.
Turning to another area of concern, in the November 22, 1981 Sunday edition of the newspaper, the Tampa Tribune, on page 1C, there was carried an article written by Valerie Strauss of the United Press International news service which indicates that there was a broad proliferation of weapons in Dade County during the 1980-81 fiscal year. In Dade alone, according to her article, residents purchased 66,193 guns during the aforesaid period. Because of the increase in crime and the accompanying increase in fear by honest citizens for their personal safety, I would suspect that other areas, metropolitan and rural, have experienced a similar increase in the number of guns purchased by the citizenry.
The question of why an alarming number of citizens now feel the necessity to arm themselves should be also a factor to be considered by our lawmakers in spurring along quick legislative attention to chapter 790.
NOTES
[1] Ensor specifically noted that it was not considering the effect of any of the exceptions contained in section 790.25(3). 403 So.2d at 355.