449 So.2d 892 (1984)
Lilton B. HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. AO-204.
District Court of Appeal of Florida, First District.
April 11, 1984.
*894 Michael E. Allen, Public Defender, Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Chief Judge.
Harris appeals his conviction for possession of a firearm by a convicted felon, contending the court erred in (1) denying his motion to dismiss based on the doctrines of collateral estoppel, and double jeopardy, (2) allowing the state to introduce documentary evidence of Harris' four prior felony convictions, and (3) denying his motion for judgment of acquittal. We disagree and affirm.
The evidence, viewed as it must be in favor of the state, see Cates v. State, 408 So.2d 797, 799 (Fla. 2d DCA 1982), shows that Harris and three others spent the evening of December 3, 1981 at several Tallahassee nightclubs. During the early hours of December the fourth, they went to Harris' residence, which he shared with his elderly grandmother. There, Harris and one of his companions, Deloris Jackson, became embroiled in a heated argument over money which Jackson claimed was missing from her purse. As Jackson left in her own automobile, shots were fired into her vehicle, shattering the rear window. Nobody, including Jackson, then saw Harris actually possess or shoot a firearm.
Later during the evening, Harris was confronted at his home by police officers who questioned him regarding the shooting incident. Harris denied having or shooting a gun but, in response to interrogation, stated there had been a number of burglaries at his home and he guessed he had "overreacted." Officer Bailey asked where "the gun" was and Harris replied that his grandmother had taken it into the house. When Officer Bailey later questioned the grandmother about the weapon, she directed Vanessa Edwards, Harris' fiance, to retrieve it from her bedroom and give it to the officer.
Harris was charged both with shooting into an occupied vehicle and with possession of a firearm by a convicted felon. At his trial, Jackson, Edwards and Officer Bailey recounted the events of December third and fourth as described above. In deposition testimony, which was read to the jury, Harris' grandmother stated that she owned a .38 caliber pistol and that, when Harris asked to borrow it on December the third, she complied, and on the following morning, she found a gun under the driver's seat of Harris' car and took it into the house. Some time after Harris' arrest she was asked to go to the police station to identify a weapon and she then discovered it was not a .38. When the grandmother confronted Harris with the discrepancy, he told her he had traded her gun for a heavier weapon.
For purposes of satisfying the elements of the second charge, the parties stipulated to Harris' status as a convicted felon. On that evidence the jury acquitted Harris on the charge of shooting into an occupied vehicle, but was unable to reach a verdict as to count two, thereby resulting in a mistrial.
Harris was retried on the charge of possession of a firearm by a convicted felon *895 and Jackson and Officer Bailey testified as before. The in-court testimony of Harris' grandmother differed from her prior deposition testimony admitted at the previous trial only insofar as she stated she had found the gun in Harris' car and retained it with her when she had gone to a hospital, returning it to her bedroom only after coming home. The only additional evidence presented at the second trial was the introduction, over objection, of certified copies of Harris' four prior felony convictions. The introduction of the documentary evidence was accomplished by the testimony of a deputy clerk who authenticated each judgment of conviction and read, to the jury, the particulars of each of Harris' prior crimes. After each document was thus introduced, the trial court instructed the jury that the conviction was for the commission of a felony. On that evidence Harris was convicted as charged and was sentenced to five years in prison.
Harris first contends that reprosecution for possession of a firearm by a convicted felon was barred by the doctrine of collateral estoppel. This doctrine, which is embodied in the Fifth Amendment's prohibition against double jeopardy, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Unlike double jeopardy,[1] however, collateral estoppel does not create a complete bar to prosecution, rather, it "may in some cases only prevent the relitigation of certain issues." 21 Am.Jur.2d Criminal Law § 322 (1981) (e.s.). Harris urges that the case at bar is controlled by State v. Perkins, 349 So.2d 161, 164 (Fla. 1977), which holds, "[E]vidence of crimes for which a defendant has been acquitted is not admissible in a subsequent trial." We disagree that Perkins has the effect of barring a defendant's later trial for an offense for which the jury was unable to return a verdict. Perkins is factually distinguishable from the case at bar in that there the defendant was charged with the attempted rape of a six-year old child. In an evident attempt to offer evidence of the defendant's "modus operandi", a witness was allowed to testify that when she was fourteen years old, Perkins had attempted to rape her. Because Perkins had been acquitted of that prior crime, the trial court committed reversible error in permitting that evidence to go before the jury. Here, however, no similar fact or Williams[2] rule evidence relating solely to a prior incident of firing into an occupied vehicle was admitted. Instead, the state sought to introduce evidence of the events of December the third and fourth to show, if possible, that on December the fourth Harris owned, or had in his care, custody, possession or control, a firearm during a time that he retained his status as a convicted felon. That the jury had never previously decided such issue in Harris' favor is clearly evidenced by the fact that it was unable to reach a verdict on this specific offense.
The controlling
test to determine whether collateral estoppel acts as a bar to further prosecution is not whether the factual issue in question was inherently decided by the jury's prior verdict, but rather whether such factual issue was actually decided by the jury in reaching its verdict.
*896 Gragg v. State, 429 So.2d 1204, 1206 (Fla. 1983) (e.s.). Here, unlike the situation that occurred in Gragg, it is evident that the factual issue of possession was not "actually decided" by the jury when it acquitted Harris of shooting into an occupied vehicle. In the first place, the jury could have reasonably acquitted Harris on that charge by concluding, as the state suggests, that Harris lacked the requisite intent or, which is more likely, that he possessed a gun but did not shoot it. Second, there was independent evidence of Harris' possession of a firearm in the form of his grandmother's testimony that Harris had borrowed her gun on December the third; that she found a gun under the driver's seat of his car on December four, and that, after learning that the gun she turned over to the police was not hers, Harris told her he had traded her pistol for a heavier weapon. Finally, a mistrial resulted from the jury's inability to decide the possession issue in this case. Applying Gragg, we are convinced that admission of evidence relating to the alleged shooting incident for which Harris was acquitted was not barred by the doctrine of collateral estoppel.
Harris next contends that the trial court committed reversible error by allowing the state to introduce documentary evidence of Harris' four prior felony convictions, because the probative value of that evidence was substantially outweighed by its prejudicial and cumulative effect. Section 790.23, Florida Statutes, under which Harris was charged, provides in part:
(1) It is unlawful for any person who has been convicted of a felony in the courts of this state or of a crime against the United States which is designated as a felony or convicted of an offense in any other state, territory, or country punishable by imprisonment for a term exceeding 1 year to own or to have in his care, custody, possession, or control any firearm or electric weapon or device or to carry a concealed weapon, including all tear gas guns and chemical weapons or devices.
(2) This section shall not apply to a person convicted of a felony whose civil rights have been restored.
(e.s.) There is no question that a "prior conviction is a substantive element of the crime of possession of a firearm by a convicted felon." State v. Vazquez, 419 So.2d 1088, 1090 (Fla. 1982) (e.s.).
Although it is clear that the state was required to prove that Harris was convicted of at least one prior felony, Harris nevertheless urges it was unnecessary to introduce evidence of all four of his prior convictions and that the decision to do so, at the second trial, amounted to prosecutorial "overkill". We agree that the state was required to prove only that Harris had been convicted of one prior felony to satisfy this element of section 790.23. Once, as in this case, the state is presented with numerous prior felonies from which to choose, case law suggests it is not necessary to introduce evidence of all prior felony convictions out of an abundance of caution lest the selected felony conviction later prove subject to collateral attack. This is because section 790.23, similar to its federal counterpart, "imposes a firearm disability until the [felony] conviction is vacated or the felon is relieved of his disability by some affirmative action", such as having his civil rights restored. Lewis v. United States, 445 U.S. 55, 60-61, 100 S.Ct. 915, 918-919, 63 L.Ed.2d 198 (1980). At issue is the defendant's status at the time of the alleged possession; the fact that his "outstanding felony conviction ultimately might turn out to be invalid for any reason" provides no exception. 445 U.S. at 62, 100 S.Ct. at 919. See also United States v. Johnson, 612 F.2d 305 (7th Cir.1980); Cassity v. United States, 521 F.2d 1320 (6th Cir.1975).
Although we are convinced there was no necessity to introduce documentary proof of Harris' four prior felony convictions, we are also mindful that the test for admissibility of evidence of such prior convictions is one of relevancy, not necessity. See Ruffin v. State, 397 So.2d 277, 279 (Fla. 1981). Because a "prior conviction" is *897 a substantive element to be proved by the state in prosecuting a defendant charged with possession of a firearm by a convicted felon, there is no question that evidence of all prior felony convictions has probative value. See Parker v. State, 408 So.2d 1037 (Fla. 1982). The issue, then, is whether some other evidentiary rule would render evidence that is clearly relevant nevertheless inadmissible because it is simply "unnecessary" in establishing the offense? The answer, we consider, is found in Parker, wherein the Florida Supreme Court concluded that the test of "legal relevancy",[3] set out in Section 90.403, Florida Statutes, is to be applied:
[P]roof of conviction is relevant evidence and is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or needless presentation of cumulative evidence.
408 So.2d at 1038 (e.s.). Accord Vazquez, 419 So.2d at 1090.
Applying the above test to the facts of this case, we must first determine whether it can be said that the probative value of Harris' four prior felony convictions was "substantially outweighed" by the danger of unfair prejudice or the needless presentation of cumulative evidence. In reaching this determination, we must bear in mind that although the inadmissibility of evidence which fails to satisfy the test of section 90.403 is stated in mandatory terms,
a large measure of discretion rests in the trial judge to determine whether the probative value of the evidence is substantially outweighed by any of the enumerated reasons. The court must weigh the proffered evidence against the other facts in the record and balance it against the strength of the reason for exclusion.
* * * * * *
Certainly, most evidence that is admitted will be prejudicial to the adverse party. Section 403 does not bar this evidence; it is directed at evidence which inflames the jury or appeals strongly to the jury's prejudice. Only when that unfair prejudice substantially outweighs the probative value of the evidence, is the evidence excluded.
C. Ehrhardt, Florida Evidence § 403.1 at 62-63 (1977) (e.s.). See also Westley v. State, 416 So.2d 18, 19 (Fla. 1st DCA 1982) (unfair prejudice means an undue tendency to evoke an emotional response). As with other discretionary evidentiary determinations which a trial court is called upon to make, a decision to admit evidence will not be disturbed absent a showing of abuse of discretion, see Jent v. State, 408 So.2d 1024, 1029 (Fla. 1981), or, in other words, a demonstration of prejudice to the substantial rights of the defendant. Brown v. State, 426 So.2d 76, 79 (Fla. 1st DCA 1983). In the absence of such a demonstration, the erroneous admission of evidence may require the application of the harmless error rule, thus making reversal improper unless "the error committed was so prejudicial as to vitiate the entire trial." State v. Murray, 443 So.2d 955, 9 FLW 16 (Fla. 1984) (e.s.). See also Westley, 416 So.2d at 19 (overly repetitious presentation of evidence relating to defendant's inculpatory statement to police officers did not constitute reversible error).
The present state of Florida law on the prejudice, or lack thereof, resulting from a trial court's receiving evidence of collateral crimes unrelated to the offense charged is not, however, without considerable confusion. On the one hand, Parker holds that a copy of a single judgment of conviction that shows on its face the nature of the crime involved is admissible for the purpose of proving the element of prior felony conviction. Following that reasoning, we recently held in McGee v. State, 435 So.2d 854 (Fla. 1st DCA 1983), that seven capiases, which included a description of the nature of each crime, were admissible to *898 prove that the defendant was in lawful custody in connection with an escape charge, and that it was not necessary to limit the state to one such capias. On the other hand, in State v. Williams, 444 So.2d 13 (Fla. 1984), holding that the state need only prove the defendant was in custody as opposed to lawful custody at the time of his purported escape, our supreme court has again suggested that the considerations described in Fouts v. State, 374 So.2d 22 (Fla. 2d DCA 1979), concerning prejudice to the defendant by admitting evidence of the nature or details of collateral convictions, remain viable. In State v. Vasquez, the supreme court reversed convictions of first degree murder and unlawful display of a firearm during commission of a felony, because of the trial court's erroneous refusal to sever at trial a count charging unlawful possession of a firearm by a convicted felon. The court was particularly concerned that the jury's verdict may have been influenced by evidence supporting the unlawful possession count, revealing that the defendant had been adjudicated guilty of offenses unrelated to those for which he was then on trial. More importantly perhaps is the supreme court's holding that, for purposes of prosecutions under the felony petit theft statute (section 812.021(3), Florida Statutes), evidence of prior misdemeanor convictions cannot be submitted to the jury, but must be presented to the court in a later proceeding after conviction of the defendant on the pending theft charge. State v. Harris, 356 So.2d 315 (Fla. 1978). The court reasoned in Harris that evidence of the prior offenses adversely affected the defendant's constitutional right to the presumption of innocence and required reversal.
Each of these cases is obviously distinguishable on the facts, but the decisions' rationale is impossible to reconcile with any degree of consistency regarding the issue of prejudice resulting from the jury's consideration of prior crimes that are unrelated to the offense for which the defendant is being tried and that are not otherwise admissible under the Williams rule. Accordingly, we are obliged to look to the supreme court for clarification of this confusion and certify the following as a question of great public importance:
Whether, in a prosecution for unlawful possession of a firearm by a convicted felon under section 790.23, Florida Statutes, the admission into evidence of more than one prior felony conviction and the particulars of each such crime (none being related to the offense charged), for the purpose of proving that the defendant was a convicted felon, is so prejudicial to the defendant's right to a fair trial as to constitute reversible error?
With these principles in mind, and although we may well have reached a result different than that of the trial court, we are unable to find, on this record, that the trial court's decision to admit evidence of Harris' four prior felony convictions amounted to an abuse of discretion. Finally, we reject as without merit appellant's argument that the court erred in denying his judgment of acquittal.
AFFIRMED.
BOOTH and ZEHMER, JJ., concur.
NOTES
[1] Harris also contends that double jeopardy applies to bar his retrial for the offense of possession of a firearm by a convicted felon. This contention is without merit. The double jeopardy provisions of the United States and Florida constitutions protect "against multiple punishments for a single criminal offense", not against prosecution for multiple offenses arising out of a single criminal episode. Bell v. State, 369 So.2d 932, 934 (Fla. 1979). Moreover, the declaration of a mistrial based upon the jury's inability to agree on a verdict does not constitute former jeopardy, and a defendant may be retried for the same offense. See State v. Grayson, 90 So.2d 710, 713 (Fla. 1956); Larrabee v. State, 243 So.2d 432, 434 (Fla. 2d DCA 1971); 14 Fla.Jur.2d Criminal Law § 301 (1979).
[2] Williams v. State, 110 So.2d 654 (Fla. 1959).
[3] See Brown v. State, 426 So.2d 76, 88-89 (Fla. 1st DCA 1983), wherein we discussed the distinctions between "logical" relevancy, set out in Section 90.401, Florida Statutes, and "legal" relevancy, set out in section 90.403.