403 So.2d 349 (1981)
Elton E. ENSOR, Petitioner,
v.
STATE of Florida, Respondent.
No. 57817.
Supreme Court of Florida.
June 4, 1981.
Rehearing Denied September 25, 1981.
*350 Richard L. Jorandby, Public Defender and Tatjana Ostapoff, Chief, Appellate Division, West Palm Beach, for petitioner.
Jim Smith, Atty. Gen. and Max Rudmann, Asst. Atty. Gen., West Palm Beach, for respondent.
OVERTON, Justice.
This is a petition for certiorari to review a decision of the Fourth District Court of Appeal, State v. Ensor, 375 So.2d 13 (Fla. *351 4th DCA 1979), which we find directly conflicts with Porchay v. State, 321 So.2d 439 (Fla. 1st DCA 1975); Christian v. State, 303 So.2d 405 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 778 (Fla. 1975); and State v. Day, 301 So.2d 469 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 748 (Fla. 1975). We grant the petition for review.[1] The issue to be determined is whether an object observed from a "pre-intrusive open view" and believed by a trained police officer to be a weapon can also simultaneously be a "concealed weapon" prohibited under section 790.01, Florida Statutes (1977). We answer the question in the affirmative, holding that what an officer observes in carrying out his duties and what the average person may see from "ordinary observation" are not necessarily the same. We affirm the result of the instant district court decision.
The facts are undisputed. On October 8, 1977, at about 2:35 a.m., two plainclothes policemen in an unmarked cruiser spotted a yellow Pinto exiting a parking lot following eight to ten motorcycles. The Pinto proceeded some ten blocks without its headlights turned on. Considering it a traffic hazard, the policemen sounded their siren and flashed their blue dash light to signal the Pinto to pull over. It proceeded another two blocks before stopping. The officers pulled in behind, identified themselves, and instructed the Pinto's two occupants to step to their vehicle's rear. Petitioner was the passenger. At about the same time, two other plainclothes policemen arrived at the scene to assist. While the first two officers questioned the Pinto's driver and petitioner, the second two stepped forward to look into the vehicle with their flashlights for hidden passengers, weapons, or other contraband in accordance with normal police procedure. Peering through the front windshield, one officer spotted a portion of a white object protruding from under the left side of the passenger floormat. From squatting and looking into the already-opened passenger door, the officer determined the object to be a derringer pistol. At that point, the officer entered the vehicle and retrieved the weapon.
The state charged petitioner with carrying a concealed weapon in violation of section 790.01. During his subsequent prosecution, petitioner moved to suppress the gun as being illegally seized without a warrant. The state responded that the weapon was in "plain view" and therefore properly seized. Petitioner countered that if the derringer was in "plain view," it could not be "concealed," and moved for dismissal on that basis. The trial court granted the dismissal, but the Fourth District reversed holding that a "concealed weapon" and a "plain-view search" were not necessarily mutually exclusive.
The outcome of the suppression motion and the motion for dismissal is controlled by the legality of the search and the legal status of the firearm. This situation requires us to answer two distinct questions: (1) whether the officers' search and seizure was a proper intrusion into petitioner's automobile, and (2) whether the weapon seized was in fact "concealed" under section 790.001. The answers are to a certain degree interrelated.

Legality of Search ("Plain View" vs. "Open View")
In addressing the first question, we note that the state initially justified its warrantless search and seizure by arguing that the weapon was in "plain view." The state has, however, confused the term "plain view" with what is properly termed "open view." Petitioner and the trial and district courts have likewise confused the terms. The error is not uncommon.[2] Judge Charles Moylan *352 of the Maryland Special Court of Appeals has properly defined and distinguished the terms:
In this context, we studiously avoid the phraseology "in plain view" to avoid any implication that the so-called "plain view doctrine" is being invoked. That doctrine is not here applicable. Needless confusion is frequently engendered by the employment in many opinions of the same phrase  "in plain view"  to describe two visually similar but legally distinct situations. The "plain view doctrine," as described in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, refers exclusively to the legal justification  the reasonableness  for the seizure of evidence which has not been particularly described in a warrant and which is inadvertently spotted in the course of a constitutional search already in progress or in the course of an otherwise justifiable intrusion into a constitutionally protected area. It has no applicability when the vantage point from which the "plain view" is made is not within a constitutionally protected area. It is, therefore literarily discreet to use for such latter situations some alternative phraseology such as ["open view,"] "clearly visible," "readily observable," "open to public gaze," etc., rather than to employ the words "in plain view" in their purely descriptive capacity, lest the unwary reader read them in their other and talismanic capacity as an invocation of the doctrine of the same name in nonintrusive situations where it is not applicable.
Scales v. State, 13 Md. App. 474, 477, n. 1, 284 A.2d 45, 47 n. 1 (1971).
The term "plain view" has been misunderstood and misapplied because courts have made it applicable to three distinct factual situations. This has resulted in confusion of the elements of the "plain view doctrine." To eliminate this confusion, we believe it appropriate to distinguish the true "plain view doctrine" as established in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), from other situations where officers observe contraband.
The first factual situation we identify as a "prior valid intrusion." In this situation, an officer is legally inside, by warrant or warrant exception, a constitutionally protected area and inadvertently observes contraband also in the protected area. It is this situation for which the United States Supreme Court created the "plain view doctrine" in Coolidge and held that an officer could constitutionally seize the contraband in "plain view" from within this protected area. We emphasize that it is critical under this doctrine for the officer to be already within the constitutionally protected area when he inadvertently discovers the contraband.
We identify the second factual situation as a "non-intrusion." This situation occurs when both the officer and the contraband are in a non-constitutionally protected area. Because no protected area is involved, the resulting seizure has no fourth amendment ramifications, and, while the contraband could be defined as in "plain view," it should not be so labeled to prevent any confusion with the Coolidge "plain view doctrine."
The third situation concerns a "pre-intrusion." Here, the officer is located outside of a constitutionally protected area and is looking inside that area. If the officer observes contraband in this situation, it only furnishes him probable cause to seize the item. He must either obtain a warrant or have some exception to the warrant requirement before he may enter the protected area and seize the contraband. As with the non-intrusion situation, the term "plain view" should not be employed here to prevent confusion. For clarity, we label an observation in the latter two non-Coolidge situations as a legally permissive "open view."
We find that the instant facts fit properly into the third, pre-intrusion, category. The police officers had stopped the vehicle in which petitioner was a passenger *353 pursuant to a valid traffic arrest. When one officer stepped forward to look into the vehicle, he stood outside the vehicle, a nonprotected area, and looked inside, a constitutionally protected area. It is clear at this point that, on seeing the firearm in "open view" through the open car door, the officer had probable cause to believe that the felony of possessing a concealed firearm was being committed in his presence. He then needed a warrant or warrant exception before he could enter the vehicle and seize the firearm. Under the facts, the officer was legally justified in seizing the firearm without a warrant under the "automobile exception" to the warrant requirement, the basis for warrantless entry being the exigency of a "movable" vehicle. Albo v. State, 379 So.2d 648 (Fla. 1980). See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Cf. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (court stated that warrantless vehicle search is justified in part because of diminished expectation of privacy in automobile); Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (same). The officer was additionally justified in retrieving the weapon for purposes of self-protection. Warren v. United States, 447 F.2d 259 (9th Cir.1971); United States v. Thompson, 420 F.2d 536 (3d Cir.1970). See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We hold therefore that the instant seizure was clearly reasonable.

Concealed Firearms
The second question which confronts us is: Under what circumstances is a firearm in fact "concealed"? Section 790.01, Florida Statutes (1977), reads in pertinent part:
(2) Whoever shall carry a concealed firearm on or about his person shall be guilty of a felony of the third degree... .
Concealed firearm is defined by section 790.001(2), Florida Statutes (1977):
"Concealed firearm" means any firearm ... when the same is carried on or about a person in such a manner as to conceal said firearm from the ordinary sight of another person.
This Court has not previously addressed what constitutes a concealed weapon under these sections. The district court decisions are conflicting and irreconcilable.
The Third District Court of Appeal has held that a pistol in an automobile glove compartment comprises a concealed firearm. State v. Butler, 325 So.2d 55 (Fla. 3d DCA 1976). The First District, one day later, in Sutton v. State, 327 So.2d 234 (Fla. 1st DCA), cert. denied, 334 So.2d 608 (Fla. 1976), said a firearm in a closed automobile glove compartment was not concealed within the meaning of chapter 790. The Third District has held that a firearm underneath a defendant's automobile seat and totally obscure from view was concealed. Lawson v. State, 251 So.2d 683 (Fla. 3d DCA 1971). The Second District, on the other hand, held that a revolver out of view under the defendant's front seat but holstered with a leather strap snapped over the hammer, was concealed under section 790.01(2) but was excepted by section 790.25. State v. Hanigan, 312 So.2d 785 (Fla. 2d DCA 1975). The First and Third District Courts have stated that any time a weapon is open to an officer's observation, it is not concealed. Specifically, the courts determined that a handgun was not concealed when it was protruding from under defendant's automobile seat and partially visible from peering through the vehicle window. Christian v. State, 303 So.2d 405 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 778 (Fla. 1975); State v. Day, 301 So.2d 469 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 748 (Fla. 1975). Yet, the Fourth District Court in the instant case held that a pistol under the front seat and partially visible from the front windshield could qualify as a concealed weapon.
Other jurisdictions with concealed weapon statutes similar to Florida's have considered the instant question. The majority of those jurisdictions have concluded that a weapon need not be totally hidden from view to constitute a "concealed weapon" for purposes of prosecution under the respective *354 statutes.[3] For example, in Mularkey v. State, 201 Wis. 429, 230 N.W. 76 (1930), the defendant reached into his automobile during an altercation and withdrew a .32 Colt automatic revolver from a small shelf behind the driver's seat. In affirming defendant's conviction for possessing a concealed firearm, the court said, "[i]f the weapon is hidden from ordinary observation, it is concealed. Absolute invisibility to other persons is not indispensable to concealment." Id. at 432, 230 N.W. at 77.
Similarly, in People v. Williams, 39 Ill. App.3d 129, 350 N.E.2d 81 (1976), a police officer viewed a .38 caliber pistol lying on the rear floorboard of defendant's automobile. The weapon could not be seen except from the side window view and was easily accessible to defendant. The Illinois appellate court affirmed defendant's concealed weapon conviction and pointed out: "It is well settled in Illinois that a weapon is `concealed' ... even though there is some notice of its presence to an alert police officer who can see part of the gun when he approached [sic] the vehicle." Id. at 131, 350 N.E.2d at 83.
The Alabama Supreme Court set forth its standard in the early case of Driggers v. State, 123 Ala. 46, 49, 26 So. 512, 514 (1899): "[I]f the pistol is carried on the person under such conditions that it is hidden from view from the observation of persons coming in contact with the person carrying it, casually observing his person, this is a concealment, and in violation of the statute."
We agree with the majority view and find that absolute invisibility is not a necessary element to a finding of concealment under section 790.001. The operative language of that section establishes a twofold test. For a firearm to be concealed, it must be (1) on or about the person and (2) hidden from the ordinary sight of another person. The term "on or about the person" means physically on the person or readily accessible to him. This generally includes the interior of an automobile and the vehicle's glove compartment, whether or not locked. The term "ordinary sight of another person" means the casual and ordinary observation of another in the normal associations of life. Ordinary observation by a person other than a police officer does not generally include the floorboard of a vehicle, whether or not the weapon is wholly or partially visible.
These statements are not intended as absolute standards. Their purpose is to make it clear that a weapon's possible visibility from a point outside the vehicle may not, as a matter of law, preclude the weapon from being a concealed weapon under section 790.001. Similarly, a weapon's location in some extreme part of the vehicle's interior may be such that the trier of fact finds the weapon to be not "about the person," and thus not concealed. In all instances, common *355 sense must prevail. The critical question turns on whether an individual, standing near a person with a firearm or beside a vehicle in which a person with a firearm is seated, may by ordinary observation know the questioned object to be a firearm. The ultimate decision must rest upon the trier of fact under the circumstances of each case.
In carrying out normal procedures in making an arrest, the officer in the instant case discovered the derringer pistol on the vehicle's floorboard through a legally permissive "open view." The undisputed facts reflect, however, that the officer could not identify the object until he looked through the open vehicle door and under the vehicle seat. The gun was on the floor, partially under the mat. We find that this weapon could qualify as hidden from the ordinary sight of the average person. It should be emphasized that the permissible and legal observations of a police officer in making an arrest and the observation of an average person making normal contact with an individual are clearly not the same. We hold that appellant's prosecution for possession of a concealed firearm was permissible and that the firearm was wrongfully suppressed. The jury should determine whether this weapon was concealed under these facts.
In our decision, we have not considered the effect of Florida's weapon licensing provisions or the effect of the exceptions thereto. See §§ 790.05, .06, .25, Fla. Stat. (1979).
The result of the instant decision of the Fourth District Court of Appeal is affirmed. The decisions in Sutton v. State, Porchay v. State, Christian v. State, and State v. Day are hereby disapproved to the extent that they conflict with the views expressed in this opinion.
It is so ordered.
ENGLAND, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in the result only.
BOYD, J., dissents with an opinion.
ADKINS, J., dissents.
BOYD, Justice, dissenting.
I agree with the trial court that since the weapon could be seen by anyone looking through the windows or doors of the automobile it was not a concealed weapon.
The majority opinion tries earnestly to define a vague statute and explains how several appellate courts have disagreed in construing the statute in almost identical circumstances. I think instead of trying to save the statute by stating our own views of what the law should provide we should firmly urge the legislature to define what acts and circumstances constitute carrying a concealed weapon.
What the public generally knows, courts can notice judicially. The rising increase of violent crimes in which pistols are used should demonstrate the urgent need for laws clearly stating who may carry weapons that are concealed, and under what circumstances, and what constitutes concealment.
Ambiguities in criminal laws must be construed against the state. Since Florida appellate courts would likely disagree on whether the petitioner's possession of the derringer under his car seat was a violation of law I would reverse the district court and direct it to affirm the trial court's dismissal of the criminal charge.
NOTES
[1] Art. V, § 3(b)(3), Fla. Const.
[2] See, e.g., United States v. Rollerson, 491 F.2d 1209 (5th Cir.1974); United States v. Story, 463 F.2d 326 (8th Cir.), cert. denied, 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972); United States v. West, 460 F.2d 374 (5th Cir.1972); United States v. Drew, 451 F.2d 230 (5th Cir.1971); McGraw v. State, 387 So.2d 444 (Fla. 1st DCA 1980); Porchay v. State, 321 So.2d 439 (Fla. 1st DCA 1975); Christian v. State, 303 So.2d 405 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 778 (Fla. 1975); State v. Day, 301 So.2d 469 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 748 (Fla. 1975); People v. Gray, 37 Mich. App. 189, 194 N.W.2d 545 (1971).
[3] See Driggers v. State, 123 Ala. 46, 26 So. 512 (1899) (pistol partially in defendant's pocket and covered with hand); McKee v. State, 488 P.2d 1039 (Alaska 1971) ("mexican toothpick" knife partially in defendant's pocket; jury question as to concealment); People v. May, 33 Cal. App.3d 888, 109 Cal. Rptr. 396 (1973) (Derringer in defendant's rear pocket made bulge and had silver top slightly protruding); Marshall v. State, 129 Ga. App. 733, 200 S.E.2d 902 (1973) (handle of pistol tucked in defendant's pants but visible to some extent through split in defendant's shirt); State v. McNary, 100 Idaho 244, 596 P.2d 417 (1979); People v. Euctice, 371 Ill. 159, 20 N.E.2d 83 (1939) (pistol on rear floorboard of defendant's vehicle); People v. Williams, 39 Ill. App.3d 129, 350 N.E.2d 81 (1976) (same); Prince v. Commonwealth, 277 S.W.2d 470 (Ky. 1955) (automatic handgun in pocket with butt sticking out); Shipley v. State, 243 Md. 262, 220 A.2d 585 (1966) (dirk protruding from under driver's seat of defendant's automobile); People v. Charron, 54 Mich. App. 26, 220 N.W.2d 216 (1974) (knife slightly protruding from defendant's rear pocket); People v. Jones, 12 Mich. App. 293, 162 N.W.2d 847 (1968) (butt of gun "poking" out of defendant's pocket and completely hidden from view when defendant seated in automobile); State v. Bordeaux, 337 S.W.2d 47 (Mo. 1960); Kennedy v. State, 171 Neb. 160, 105 N.W.2d 710 (1960); State v. Rabatin, 25 N.J. Super. 24, 95 A.2d 431 (1953); State v. Pettit, 20 Ohio App.2d 170, 252 N.E.2d 325 (1969) (knife with six-inch blade in sheath under passenger seat of defendant's automobile nevertheless concealed); Mularkey v. State, 201 Wis. 429, 230 N.W. 76 (1930) (.32 Colt automatic revolver on shelf behind driver's seat of defendant's automobile).