407 So.2d 1011 (1981)
Norman Delbert KELLY, Appellant,
v.
STATE of Florida, Appellee.
No. 81-548.
District Court of Appeal of Florida, Fifth District.
December 23, 1981.
*1012 James B. Gibson, Public Defender, and James R. Wulchak, Asst. Public Defender, Chief, Appellate Division, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Shawn L. Briese, Asst. Atty. Gen., Daytona Beach, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Appellant Norman Kelly appeals from an order withholding an adjudication of guilt and placing him on probation. We REVERSE.
Two off-duty deputies working as security guards at a skating rink saw Kelly standing next to his automobile in the parking lot. Kelly was drinking a bottle of beer and he appeared intoxicated. The guards asked appellant to either enter the skating rink or to leave. Kelly replied that he could drink his beer anywhere he wanted but he otherwise created no disturbance.
The guards then requested identification. To comply, Kelly looked inside the car for his wallet. The car was full of clothes and other personal items. While moving some clothes, an amber-colored prescription bottle came into view. When one of the guards asked him for the bottle, Kelly refused. The guards grabbed the bottle and opened it to ascertain its contents. The bottle contained a single white tablet later identified as methaqualone, a controlled substance.
Kelly was charged with unlawful possession of a controlled substance. Prior to trial, his motion to suppress the evidence was denied. On appeal, Kelly contends that he was illegally detained, that he did not consent to a search of his automobile or to a seizure of the evidence and that the deputies did not have probable cause to seize the evidence; therefore, he argues that his motion to suppress should have been granted.
The state argues that when Kelly refused to obey the guard's request, he was committing a trespass and therefore the guard had the right to temporarily detain him for investigatory purposes.[1]Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); § 901.151, Fla. Stat. (1979).
Section 810.09, Florida Statutes (1979), provides in part as follows:
(1) Whoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011, commits the offense of trespass on property other than a structure or conveyance.
* * * * * *
(2)(b) If the offender defies an order to leave, personally communicated to him by the owner of the premises or by an authorized person, ... he is guilty of a misdemeanor of the first degree, punishable *1013 as provided in s. 775.082, s. 775.083, or s. 775.084.
Contrary to Kelly's assertion, his conduct indicates that he did not intend to comply with the request of the deputies. Appellant was asked to go inside the skating rink or leave by the deputies who, as security guards, were "authorized persons" within the purview of section 810.09. The only evidence of Kelly's response was his reply that he "could drink his beer wherever he wanted to." This response reasonably indicates that appellant was defying or intended to defy the order from the deputies. In these circumstances, a limited intrusion to ascertain Kelly's identity while investigating a possible trespass was justified. See Mayo v. State, 382 So.2d 327 (Fla. 1st DCA 1980).
Under the "stop and frisk" statute, however, the right to search does not automatically follow once the right to detain is established. Schnick v. State, 362 So.2d 423 (Fla. 4th DCA 1978). Here, Kelly's automobile was searched without a warrant. To be reasonable, the search must have been conducted within a recognized exception to the warrant requirement. See, e.g., Norman v. State, 379 So.2d 643 (Fla. 1980).
The state seeks to justify the search and seizure of the amber colored prescription bottle from Kelly's automobile on what it terms the "plain view" exception to the warrant requirement. In Ensor v. State, 403 So.2d 349 (Fla. 1981), a factually similar case, the supreme court recently discussed the confusion between the term "plain view" and what is properly termed "open view." The court distinguished the "plain view" doctrine as established in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971),[2] from other situations in which officers observe contraband.
In Ensor, police officers had stopped a vehicle for a traffic violation. While the passengers were being questioned outside the vehicle, two other officers looked into the vehicle with their flashlights. One officer spotted a portion of a white object protruding from under the floormat. From squatting and looking into the already opened passenger door, the officer determined the object to be a pistol. At that point, the officer entered the vehicle and retrieved the weapon.
The supreme court characterized this set of facts as an "open-view" situation involving a "pre-intrusion":
Here, the officer is located outside of a constitutionally protected area and is looking inside that area. If the officer observes contraband in this situation, it only furnishes him probable cause to seize the item. He must either obtain a warrant or have some exception to the warrant requirement before he may enter the protected area and seize the contraband. As with the non-intrusion situation, the term `plain view' should not be employed here to prevent confusion.
403 So.2d at 352.
The court further determined that, on seeing the firearm in "open view" through the open car door, the officer had probable cause to believe that the felony of possessing a concealed firearm was being committed in his presence. The officer then needed a warrant or warrant exception before he could enter the vehicle and seize the firearm. Under the facts, the court held that the officer was legally justified in seizing the firearm without a warrant under the "automobile exception" to the warrant requirement, the basis for the warrantless entry being the exigency of the "movable" vehicle. Id. at 352 and authorities cited therein.
The present case also involves the "preintrusion" situation. The deputies, while waiting for appellant to produce identification, were standing in a non-protected area and were looking inside a constitutionally protected area. Unlike Ensor, however, the deputies here did not have probable cause to believe that the offense of possession of a *1014 controlled substance was being committed in their presence.
At the time of the seizure in the present case, the deputy saw only an amber-colored prescription bottle. He did not see any substance inside the bottle which would warrant a belief that controlled substances drugs were involved. Thus, unlike State v. Hall, 376 So.2d 276 (Fla.3d DCA 1979), cited by the state, the "incriminating nature" of the item was not "readily apparent." Rather, the item here was seized and then its contents were examined to determine whether it contained contraband. As in Carr v. State, 353 So.2d 958 (Fla.2d DCA 1978), the facts within the deputy's knowledge at the time of the seizure do not meet the standard of probable cause.
We conclude that whether the detention of appellant for investigatory purposes was proper is not controlling. The seizure of the prescription bottle was not based on probable cause and therefore the warrantless search and seizure was unreasonable. The order appealed is REVERSED and this cause REMANDED with directions to discharge appellant.
DAUKSCH, C.J., and COBB, J., concur.
NOTES
[1] The state also argued that the deputies could have suspected Kelly of committing the offenses of loitering or disorderly intoxication. We find no merit in these contentions.
[2] The true "plain view" doctrine involves a situation in which an officer is legally inside, by warrant or warrant exception, a constitutionally protected area and inadvertently observes contraband also in the protected area. 403 So.2d at 352.