450 So.2d 1212 (1984)
Jimmie Lee ALEXANDER, Appellant,
v.
STATE of Florida, Appellee.
No. 83-317.
District Court of Appeal of Florida, Fourth District.
May 16, 1984.
Rehearing Denied June 27, 1984.
Richard L. Jorandby, Public Defender, and Gary Caldwell, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Marlyn J. Altman, Asst. Atty. Gen., West Palm Beach, for appellee.
Robert Dowlut, Washington, D.C., for amicus curiae.
GLICKSTEIN, Judge.
This is an appeal of the trial court's order, denying appellant's sworn motion to dismiss. Appellant pled nolo contendere, reserving for appeal the denial of the motion to dismiss. The parties had stipulated the denial would be dispositive.
*1213 The record establishes that appellant was charged by information with carrying a concealed firearm. Appellee's traverse to the sworn motion to dismiss either admitted or pled lack of knowledge of the following material facts:
1. On September 7, 1982, the defendant was seated in the driver's seat of his automobile.
2. Defendant's automobile was parked in Wag's parking lot.
3. Defendant was employed at Wag's
4. Officer Edmonston, in plain clothes, became suspicious of the defendant and sent Officer Lerman in a marked unit to investigate.
5. Officer Lerman asked the defendant for identification.
There was disagreement as to all or part of the following facts:

 SWORN MOTION TO DISMISS TRAVERSE
 6. The defendant opened his zippered 6. Defendant's 6 denied. When the
 pouch and looked for his identification officer requested defendant's
 identification, defendant stated
 he had some and started to unzip
 a black leather hand purse. The
 defendant stopped unzipping the
 purse, zipped it back up quickly,
 and said he did not have his
 wallet or identification on his
 person at that time.
 7. Defendant was unable to find his 7. The defendant did zipper the
 identification and closed his pouch purse shut, but never looked
  zippered it shut. inside it. Officer Lerman later
 found defendant's wallet,
 driver's license and other forms
 of identification in the purse,
 after the defendant denied having
 them.

The state specifically admitted facts 8 through 10 as stated in the motion to dismiss:
8. Officer Lerman became suspicious of a bulky object in the pouch.
9. Officer Lerman opened the pouch.
10. Officer Lerman arrested the defendant for carrying a concealed firearm.
As to paragraph 11, the motion to dismiss quoted newly effective sections 790.25(5) and 790.001(16), Florida Statutes (Supp. 1982), underlying in the latter "in a zippered gun case," thus implying that the statute exempted the present situation from the prohibition against carrying concealed firearms in a motor vehicle. The state agreed that the statute was correctly quoted, but stated there was a disputed material fact in that the object containing the gun was a man's black leather hand purse and not a zippered gun case. In support of its position the state pointed out that defendant's wallet, driver's license and various forms of identification were found in another zippered compartment of the same object.
The sole issue before the trial court bearing upon the charge was whether the pistol was securely encased within the meaning of section 790.001(16). The court ruled the bag was neither a zippered gun case nor a container that requires opening a cover or a lid for access and therefore the firearm was not securely encased; and as a result of appellant's plea, withheld adjudication and placed appellant on eighteen months' probation. There are two issues on appeal, the appellant raising here for the first time the second of the two:
I. Whether the trial court erred by denying the motion to dismiss. We conclude that it did not.
*1214 II. Whether section 790.01(2), Florida Statutes (1981) as refined in sections 790.25(5), Florida Statutes (Supp. 1982) and 790.001(15), Florida Statutes (Supp. 1982) is void for vagueness. We conclude that it is not.
Accordingly, we affirm.
That this is not a run-of-the-mill case is shown by the fact the National Rifle Association (NRA) has submitted an amicus brief. While Americans continue to kill and maim themselves to such extent that communities may not have a baseball team but they have a SWAT team, English constables still walk their beats without weapons. Most contemporary constitutional scholars agree that the second amendment to the United States Constitution concerns only the militia and does not guarantee individuals an unbridled right to carry arms. The Florida Constitution, however, at article I, section 8, expressly states the right of the people to keep and bear arms in defense of themselves, as well as of the lawful authority of the state, subject to the legislature's authority to regulate the manner of bearing arms. This provision of the Florida Constitution and similar provisions in the constitutions of some thirteen other states have been read as guarantees to individuals, not the people collectively. Sections 776.012 and .031, and 782.02, Florida Statutes, reinforce this view by making it lawful to use firearms in defense of life, home and property, as does the policy declaration in the statute with which we are here most concerned, section 790.25. It would be a futile digression to point out that an alarming percentage of all deaths by firearms are perpetrated by the bearers of arms on acquaintances, friends, family members and themselves.
The purpose of present legislated restrictions on ownership, possession and use of firearms and other weapons is to promote firearms safety and to curb and prevent the use of firearms and other weapons in crime and by incompetent persons without prohibiting their lawful use in defense of life, home or property, by state and federal military, and in other lawful uses such as target practice, marksmanship, and hunting, as permitted by law. Section 790.25(1).
Section 790.01(2) makes it a third degree felony to carry a concealed firearm on or about one's person. Prior to amendment in 1982, section 790.25(3)(l) made an exception merely for "[a]ny person traveling by private conveyance when the weapon is securely encased." In Ensor v. State, 403 So.2d 349 (Fla. 1981), the Supreme Court of Florida held that a firearm need not be absolutely invisible in order to be concealed, for purposes of the statute prohibiting carrying a concealed firearm, so long as the weapon was concealed from the casual and ordinary observation of another in the normal associations of life, and the weapon was physically on the person or readily accessible to its bearer. Thus a passenger in a vehicle was carrying a concealed weapon when an officer who stopped the vehicle, peering through the windshield, saw a portion of a white object which he was then able to tell, by looking into the already-opened passenger door, was a derringer. According to Ensor a firearm could simultaneously be in open view, for purposes of seizure under the open view doctrine, and concealed, in violation of the concealed firearms statute. Moreover, even if a weapon were in a locked glove compartment, Ensor indicated it could be "about the person" and thus a prohibited concealed weapon.
Ensor apparently prompted the legislature to add section 790.25(5), Florida Statutes (Supp. 1982), which provides:
(5) POSSESSION IN PRIVATE CONVEYANCE.  Notwithstanding subsection (2), it is lawful and is not a violation of s. 790.01 to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use. Nothing herein contained prohibits the carrying of a legal firearm other than a handgun anywhere in a private conveyance when such firearm is being carried for a lawful use. Nothing herein contained shall be construed to authorize the carrying of a concealed firearm or other *1215 weapon on the person. This subsection shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons, including lawful self-defense as provided in s. 776.012.
Subsection (2), mentioned in the quoted subsection, makes clear that the usual requirement of a permit to carry a concealed firearm is not undone by this portion of the statute. The 1982 legislature also provided definitions for "securely encased" and "readily accessible for immediate use." "`Securely encased' means encased in a glove compartment, whether or not locked; in a snapped holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access." Section 790.001(16), Florida Statutes (Supp. 1982). "`Readily accessible for immediate use' means that a firearm or other weapon is carried on the person or within such close proximity and in such a manner that it can be retrieved and used as easily and quickly as if carried on the person." Section 790.001(15), Florida Statutes (Supp. 1982).
According to Rule of Criminal Procedure 3.190, the trial court must deny a motion to dismiss if the state files a sworn traverse which with specificity denies a material fact alleged in the motion to dismiss; for then it is not clear that there is lacking a prima facie case of guilt against the defendant. See Rule 3.190(c)(4) and (d).
In the present case the defense in its sworn motion to dismiss averred that the firearm was in a zippered gun case, and therefore Alexander's carrying of it in his automobile was not in violation of the statute. The state, in its sworn traverse specifically denied that the firearm was in a zippered gun case, stating rather that the firearm was in a man's black leather hand purse. It fortified this with the fact that in another zippered compartment of the same purse the officer found the defendant's wallet, driver's license and various other forms of identification.
What is a zippered gun case? The NRA, in its amicus brief, argues that Alexander's pouch qualifies as a zippered gun case, referring to a catalog that apparently enjoys considerable circulation to show that zippered gun cases may have room for carrying objects additional to the gun. The court looked at the pictures of Alexander's pouch, which are included in an envelope in the record, and determined the pouch was neither a zippered gun case nor a container requiring a top or lid to be opened to make the contents accessible. While the pictures were informational, it was the office of the trial court to look only to the motion to dismiss and the state's traverse. Having done so, the court properly could have found that there remained a dispute of a material fact which the trier of fact ought to resolve.
Appellant appropriately relies on Trushin v. State, 425 So.2d 1126 (Fla. 1983), as authority for a convicted appellant's constitutional issue being raised and entertained for the first time on appeal as shown in the following excerpt:
The district court answered the facial constitutionality of the statute question with the following correct assertion: "Notwithstanding that these issues are acknowledgedly raised for the first time on appeal, we consider their merits because a conviction for the violation of a facially invalid statute would constitute fundamental error." [Trushin v. State] 384 So.2d 668 at 672 [Fla. 3d DCA 1980] (footnotes omitted). The facial validity of a statute, including an assertion that the statute is infirm because of overbreadth, can be raised for the first time on appeal even though prudence dictates that it be presented at the trial court level to assure that it will not be considered waived. The constitutional application of a statute to a particular set of facts is another matter and must be raised at the trial level. Once an appellate court has jurisdiction it may, if it finds it necessary to do so, consider any item that may affect the case. See Whitted [v. State, 362 So.2d 668 (Fla. 1978)]; Miami Gardens, Inc. v. Conway, 102 So.2d 622 (Fla. 1958); Vance v. Bliss Properties, Inc., 109 Fla. 388, 149 So. 370 (1933).
*1216 Id. at 1129-30. It should be noted that a distinction is drawn between facial unconstitutionality of the statute and unconstitutionality of the application of the statute to the facts of the particular case. The former may be raised for the first time on appeal; the latter must first have been raised at the trial level. The logic is that a facially unconstitutional statute creates no subject matter jurisdiction pursuant to which a court may convict the accused, whereas, one infers, a statute alleged to be applied unconstitutionally in the case has no such infirmity. Thus application of an unconstitutional statute constitutes fundamental error, whereas unconstitutional application of an otherwise constitutional statute does not.[1]
HURLEY, J., and SMITH, CHARLES E., Associate Judge, concur.
NOTES
[1] As to whether the principle that facial unconstitutionality may first be raised on appeal applies when there was a nolo contendere plea rather than a trial and conviction, the law is harder to pin down. Appellant analogizes to Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). There it was held that even where the conviction resulted from a counseled plea of guilty, it must be set aside if the United States Constitution precludes the state from hauling the defendant into court on a charge. Appellant argues that in light of this holding and the practical equivalence for appellate purposes between conviction and sentence on one hand and the withholding of adjudication and imposition of probation on the other, the Trushin holding applies as well in circumstances like those of the instant case. We agree.