NIMMONS, Judge,
dissenting.
I respectfully dissent.
I have no difficulty, based upon applicable statutory and case authority, in concluding that a person who operates a motor vehicle with a firearm on the front seat which firearm, by reason of darkly-tinted windows, is hidden from the ordinary sight of another person, is in violation of Section 790.01(2) which proscribes carrying a concealed firearm.
The instant case presents an issue to be resolved by the trier of fact, that is, whether the firearm was hidden or concealed from the ordinary sight of a person outside the vehicle. As the court in Ensor v. State, 403 So.2d 349, 355 (Fla.1981), observed:
The critical question turns on whether an individual, standing near a person with a firearm or beside a vehicle in which a person with a firearm is seated, may by ordinary observation know the questioned object to be a firearm. The ultimate decision must rest upon the trier of fact under the circumstances of each case. (Emphasis supplied.)
What would be our decision if the defendant had been walking around carrying a darkly-tinted glass or plastic container with a firearm inside? Of course, he would be guilty of carrying a concealed firearm. Cf. Rogers v. State, 336 So.2d 1233 (Fla. 4th DCA 1976) (carrying closed briefcase containing firearm). Why should it be any different simply because he carries the firearm on the front seat of his automobile which he has chosen to equip with darkly-tinted windshields? Like Judge Smith, I am unimpressed by the argument that a certain degree of windshield tinting has been approved by the Florida Legislature and that the record in this case does not indicate whether the defendant’s windows met the specifications of Chapter 316. To me, whether the windows met such specifications is irrelevant to the issue of whether the defendant was carrying a firearm which was hidden from the ordinary sight of another person situated or standing outside the vehicle.
I share the majority’s concern for the safety and security of police officers who are called upon to confront vehicles with darkly-tinted windows under a variety of circumstances. Traffic stops and automobile detentions are high-risk encounters for police officers. According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer Shootings — A Tactical Evaluation, 54 J.Crim.L.C. & P.S. 93 (1963). The study says that of police officers shot in connection with vehicle stops, about half were shot by persons seated in or concealed in a car, about a third by persons standing outside the car talking to the police, and the rest by persons then exiting the car or fleeing the scene. See also 3 LaFave, Search & Seizure § 9.4 (1984 Supp.); Adams v. Williams, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924 n. 3, 32 L.Ed.2d 612 (1972); Michigan v. Long, — U.S. -, - n. 13, 103 S.Ct. 3469, 3479 n. 13, 77 L.Ed.2d 1201, 1219 n. 13, (1983). I am aware of no studies which have considered the additional factor involving motor vehicles with darkly-tinted windows. However, it seems obvious that the risks attendant to vehicular stops are appreci *76 ably greater where vehicles with darkly-tinted windows are involved. The majority’s decision, which is in my view erroneous, will, I fear, only compound the problem by placing the court’s imprimatur upon the practice of carrying a firearm on the front seat of a motor vehicle even though the windows are so dark that the firearm is hidden from the ordinary sight of a person standing outside the vehicle, a situation which I believe to be proscribed by Section 790.01 as construed by the Supreme Court in Ensor, supra.
I would reverse the trial court’s order granting the defendant’s motion to dismiss and remand for trial. I do, however, concur with the majority’s decision to certify the issue as one of great public importance.