SCHWARTZ, ALAN R., Senior Judge,
dissenting.
In LifeSouth Community Blood Centers, Inc. v. Fitchner, 970 So.2d 379 (Fla. 1st DCA 2007), review granted, 982 So.2d 1178 (Fla.2008), appeal dismissed, 1 So.3d 172 (Fla.2009) (Fitchner I), this Court squarely held that this plaintiff could not maintain this action because the estate had not given the pre-suit notice which was found to be statutorily required. Notwithstanding a certified question of great public importance, the Supreme Court eventually dismissed the appeal. Nonetheless, the majority now says that, upon a second appeal which involves the same operative facts, the dismissal entered below pursuant to that decision must now be reversed for consideration of a contention — first raised at the thirteenth hour — -that the statutory provision which required the pre-suit notice was retroactively applied contrary to the constitution. I do not accept this conclusion because it is directly contrary to numerous principles of law which do no more than reflect and rationalize the intuitive reaction that no such result can be possible.
1. Foremost is the application of the doctrine of “law of the case” of Fitchner I that a pre-suit notice was indispensable to the maintenance of this claim. See Strazzulla v. Hendrick, 177 So.2d 1 (Fla.1965); Pelican Real Estate & Dev. Co. v. Boone, Case 60 So.3d 502 (Fla. 1st DCA Apr.21, 2011); Parker Family Trust I v. City of *283 Jacksonville, 804 So.2d 493 (Fla. 1st DCA 2001), review denied, 828 So.2d 385 (Fla. 2002). Contrary to the majority view, the “law of the case” doctrine is not inapplicable because a new, previously unconsidered “issue” has now been presented. See Fla. Dep’t of Transp. v. Juliano, 801 So.2d 101 (Fla.2001). Properly analyzed, the contention of unconstitutional application is not an appropriate “issue” at all, let alone a new one. The “issue” before us then and now is whether pre-suit notice is required. The claim that the previous result was incorrect so that it is not required because the statute which required it has been unconstitutionally applied to the appellant is just and only that: a newly created argument, theory or contention made to achieve what was rejected below. But an essential part of the “law of the case” doctrine is that its effect may not be disturbed by newly created or belatedly asserted arguments that the Court was wrong in the first place.[4] See Eventys Mktg. & Prods., Inc. v. Comcast Spotlight, Inc., 28 So.3d 959, 962 (Fla. 3d DCA 2010) (“Under the ‘law of the case’ doctrine a court adheres to its own decision at an earlier stage of the litigation unless there are cogent or compelling reasons not to ....”) (quoting Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 97 CIV 8779, 1998 WL 321446 *8 (S.D.N.Y. June 18,1998)).
Putting the same principle in a somewhat different legal way, it is obvious that a holding that the statutory requirement of a pre-suit notice is not unconstitutional is a necessary prerequisite or, as the cases say, implicit or inherent in the holding that notice is necessary under the law. Contentions like this one, which are implicit or subsumed in a prior holding, are likewise encompassed in the effect of the “law of the case.” See Sax Enters. Inc. v. David & Dash, Inc., 107 So.2d 612, 613 (Fla.1958) (“if ... a particular holding is implicit in the decision rendered, then it is no longer open for discussion or consideration [e.s.].”); S/D Enters., Inc. v. Chase Manhattan Bank, N.A., 375 So.2d 1109, 1111 (Fla. 3d DCA 1979) (“A prior judgment of reversal is not necessarily an adjudication by the appellate court of any points other than the questions in terms discussed and decided, but if, however, a particular holding is implicit in the decision rendered, it is no longer open for consideration [e.s.].”); see also City of Hollywood v. Witt, 939 So.2d 315, 318 (Fla. 4th DCA 2006) (“the law of the case doctrine may foreclose subsequent consideration of issues implicitly addressed or necessarily considered by the appellate court’s decision [e.s.].” (quoting Juliano, 801 So.2d at 105-06)); Silva v. U.S. Sec. Ins. Co., 734 So.2d 429, 430-31 (Fla. 3d DCA 1999) (“ ‘[Questions necessarily involved in the decision on a former appeal will be regarded as the law of the case on a subsequent appeal, even though the questions are not expressly treated in the opinion of the court, since there is a presumption that all the facts in the case bearing on the points decided have received due consideration whether all or none of them are mentioned in the opinion.’); Id. (the law of the case doctrine applies ‘to questions actually or impliedly presented to and decided by the reviewing court.’) (emphasis added).”) (quoting 3 Fla. Jur. 2d Appellate Review § 445); see Smith v. Frank Griffin Volkswagen, Inc., 645 So.2d 585, 586-587 (Fla. 1st DCA *284 1994) (citing S/D Enters., Inc., 375 So.2d at 1111).[5]
*285 2. The order of the Court and the consequent mandate of Fitchner I required simply that the trial judge “enter an order granting appellant’s motion to dismiss.” Id. at 384. It is an established principle that the trial court has no authority or power to depart in any way — by addition or subtraction — from the terms of an appellate mandate. See Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 328 So.2d 825, 827 (Fla.1975); Pelican Real Estate & Dev. Co. v. Boone, 60 So.3d 502 (Fla. 1st DCA Apr.21, 2011); Haughey v. Royal Caribbean Cruises, Ltd., 55 So.3d 697, 698 (Fla. 3d DCA 2011) (holding that trial court properly denied appellant’s motion to amend complaint and recognized that “it was not authorized to deviate from the terms of this Court’s mandate” to dismiss the action); Hearns v. State, 54 So.3d 500, 502 (Fla. 3d DCA 2010) (“A trial court’s role upon the issuance of a mandate from an appellate court becomes purely ministerial, and its function is limited to obeying the appellate court’s order or decree. A trial court does not have discretionary power to alter or modify the mandate of an appellate court in any way, shape or form.”) (quoting Torres v. Jones, 652 So.2d 893, 894 (Fla. 3d DCA 1995) (citations omitted)); Huffman v. Moore, 834 So.2d 300, 301 (Fla. 1st DCA 2002). In the judgment now on appeal, the trial judge (although after a series of what I believe to be unnecessary steps below) followed this rule. But, with respect, the majority has ordered its violation, and in essence reversed the lower court for not doing what it surely would have been reversed if it had done.
3. In common with all appellate contentions, a claim relating to unconstitutionality is waived unless it is timely and appropriately advanced and preserved below. See Bush v. Holmes, 886 So.2d 340, 365 (Fla. 1st DCA 2004) (“Whether the application of a statute ... is constitutional must be raised first at the trial level.”); Alexander v. State, 450 So.2d 1212, 1216 (Fla. 4th DCA 1984) (“It should be noted that a distinction is drawn between facial unconstitutionality of the statute and unconstitutionality of the application of the statute to the facts of the particular case. The former may be raised for the first time on appeal; the latter must first have been raised at the trial level. The logic is that a facially unconstitutional statute creates no subject matter jurisdiction pursuant to which a court may convict the accused, whereas, one infers, a statute alleged to be applied unconstitutionally in the case has no such infirmity. Thus application of an unconstitutional statute constitutes fundamental error, whereas unconstitutional application of an otherwise constitutional statute does not.”); 10 Fla. Jur. 2d Constitutional Law § 105 (Westlaw Database updated January 2011); see, e.g., Florida Dept. of Financial Services v. Freeman 921 So.2d 598, 602 (Fla.2006) (“Tassone [attorney seeking fees] argues that the statutory scheme for the payment of attorney’s fees is unconstitutional as applied to him. *286 This argument was never raised below and cannot be raised for the first time on appeal.”). (The “fundamental error” exception to this rule, which might arise in this context when a defendant is convicted of a violating a facially invalid criminal statute, see Trushin v. State, 384 So.2d 668 (Fla. 3d DCA 1980), approved, 425 So.2d 1126 (Fla.1982), obviously has no application to this case). The doctrine exists to prevent just the kind of endless litigation which the majority now requires. It need not be reiterated that it is violated in the extreme by the majority view.
4. Most importantly, even if, notwithstanding all of this, the claim of unconstitutionally retroactive statutory application may be considered, it has no substantive merit whatever. Such an argument may be upheld only if a later-enacted statute has irremediably deprived a party of a vested and valuable property or other right. See DaimlerChrysler Corp. v. Hurst, 949 So.2d 279, 285-86 (Fla. 3d DCA 2007). In this case, as far as the plaintiff is concerned, the only thing affected in any way by the new statute, is the pre-suit notice. It is impossible to imagine that there is a cognizable right not to file a piece of paper before filing suit. Passing over the extreme doubts that there is such a “right,” that it “vested” prior to suit, but see Clausell v. Hobart Corp., 515 So.2d 1275 (Fla.1987); Pullum v. Cincinnati, Inc., 476 So.2d 657 (Fla.1985), or that it has any “value” whatsoever, plaintiff was not “deprived” of anything at all by the change of law. This is so because when it took effect there was still ample time before the statute of limitations ran for the plaintiff simply to file the allegedly newly required notice.[6],[7] In identical situations, it has been held that the plaintiff has sustained no legally, cognizable let alone constitutional harm. See Ten Mile Invs., LLC v. Sherman, 306 Wis.2d 799, 743 N.W.2d 442, 446 (2007) (“[T]he burdens [defendant] contends she will suffer if the statute is retroactively applied were avoidable by simply complying with the procedural requirements of § 802.05. She should have been aware of the new statute and had ample opportunity to comply with it. See Mosing v. Hagen, 33 Wis.2d 636, 642, 148 N.W.2d 93 (1967).”); see also Calamari v. Drammis, 286 Ill.App.3d 420, 221 IlLDec. 760, 676 N.E.2d 281, 287 (1997) (“[P]laintiff had four months after the effective date of the amendment to section 2-622 to comply *287 with its requirements. Unlike Harraz, [v. Snyder, 283 Ill.App.3d 254, 218 Ill.Dec. 590, 669 N.E.2d 911 (1996) ] there was no unfairness in requiring plaintiff to comply with this change in the law.”). I would hold the same thing here.
In the last analysis, the acceptance of the position endorsed by the majority would render the entire prior appellate history of this case an exercise in futility. Such a conclusion is contrary to the most basic principles which require — in the absence of a weighty countervailing consideration, which is not present here — that, at an appropriate point, which passed a long time ago in this case, litigation must come to an end.
I would affirm the judgment now on review both on the authority, and because of the binding legal effect of LifeSouth Community Blood Centers, Inc. v. Fitchner, 970 So.2d 379 (Fla. 1st DCA 2007), review granted, 982 So.2d 1178 (Fla.2008), appeal dismissed, 1 So.3d 172 (Fla.2009).

. It is likely that every one of us has had the unhappy experience of thinking on the way to the parking lot after oral argument — in other words, too late — of a winning contention that could and should have been made, but was not. Pressing the analogy on a little, the constitutional claim here was made only after a highly imaginative lawyer thought of it after three solo voyages around the world and one trip in the Enterprise to the moon and back.

. The majority relies on Wells Fargo Armored Services Corp. v. Sunshine Security & Detective Agency, Inc., 575 So.2d 179, 179-80 (Fla.1991), as "[fjrom a procedural standpoint ... identical,” I see it as anything but. Wells Fargo explains:
On December 13, 1983, employees of Wells Fargo Armored Services Corporation were robbed while making a pickup at the Fiialeah branch of the Intercontinental Bank. The next day an employee of Sunshi-neSecurity and Detective Agency, which provided guard services at the bank, confessed to participation in the robbery. After covering Intercontinental's losses, plus interest, Wells Fargo received an assignment of the right to proceed against Sunshine Security.
On April 13, 1984, Wells Fargo filed suit against Sunshine Security. The complaint essentially alleged that Sunshine Security was liable for the guard’s actions under the doctrine of respondeat superior. A default judgment was entered against Sunshine Security on October 30, 1984, after Sunshine Security failed to serve or file any paper in the cause. Later, Sunshine Security alleged that it had never received proper service of process prior to entry of the default judgment.
Id. at 179-80. The case goes on to state:
[on remand] plaintiff did file an amended complaint in which it added new counts embodying the theories of bailment and negligent employment against the defendant Sunshine Security and Detective Agency. The amended complaint also added a count against Jacinto Alfonso and Margaret Alfonso as surviving trustees of Sunshine Security and sought punitive damages against the above named defendants. Finally, the amended complaint alleged that Sunshine Security and Jacinto and Margaret Alfonso fraudulently conveyed assets of Sunshine Security to Sunrise Security Polygraph and Detective Bureau Corporation. The defendants appropriately tested the sufficiency of the new counts by a motion to dismiss.
Id. at 180-81.
The Court concluded:
The law-of-the-case doctrine was meant to apply to matters litigated to finality, not to matters that remain essentially unresolved due to the erroneous ruling of a lower court. Normandy Beach Properties Corp. v. Adams, 126 Fla. 844, 171 So. 796 (1937). Here, the default judgment was held to be erroneous on grounds the original complaint failed to state a cause of action. Wells Fargo, 496 So.2d at 246. The effect was to return this proceeding to the lower court as though the erroneous ruling never had been made.
Id. at 180.
I believe that, far from controlling, Wells Fargo has no application to a case such as the instant one. Here, implicit in this Court’s ruling was that the pre-suit notice requirements applied; the new claim here does no more than argue they do not apply, but for a reason different from those originally presented.
The majority also relies on U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1063 (Fla.1983) ("Bould IV”), concluding:
The defendant in that case contested the amount of punitive damages in one appeal and then argued in a subsequent appeal that the trial court had incorrectly instructed the jury on the issue of liability for punitive damages. The plaintiff maintained that the jury instruction issue was barred by the doctrine of the law of the case because it could have been raised in the earlier appeal. However, the supreme court squarely rejected that argument and decided the issue on the merits. The court held that the doctrine of the law of the case did not preclude review of the jury instruction issue merely because the defendant had failed to challenge the instruction in the prior appeal.
A review of the history of that case demonstrates, however, why the analysis in Bould IV is inapplicable. In Touchette v. Bould, 324 So.2d 707 (Fla. 4th DCA 1975) (Bould I), the Fourth District reversed and remanded defendants’ wrongful death and survivorship actions for a new trial on punitive damages, concluding the damages awarded were excessive. In Bould v. Touchette, 349 So.2d 1181, 1187 (Fla.1977) (Bould II), the Supreme Court quashed and remanded that decision to the Fourth District with specific instructions “to entertain the interlocutory appeals from the post-judgment motions of the trial court.” One of those appeals, was exactly the issue raised in Hartford Acc. & Indem. Co. v. U.S. Concrete Pipe Co., 369 So.2d 451, 452 (Fla. 4th DCA 1979) (Bould III), which explained *285 "[t]his court reversed those judgments as being excessive and the Supreme Court quashed this court’s opinion, mandating the reinstatement of the judgments and directing this court to entertain the interlocutory appeals from post-judgment orders of the trial court. Those two interlocutory appeals are what we presently consider.” (Footnotes omitted). Bould IV, was the supreme court’s consideration of Bould III — consideration of the insurer’s argument that punitive damages had to be based on vicarious liability in order for coverage to apply. Of course, if an appellate court instructs that on remand certain matters should be considered — consideration of those matters is not precluded by the doctrine of the law of the case. Bould IV represents an application of the law of the case doctrine, not an example of its inapplicability to facts like those presented herein.

. Of course, the reason that no notice was filed was that the plaintiff successfully in that instance insisted in the trial court upon the totally inconsistent argument that the amendment to the statute did not apply to blood banks like the defendant. Thus, the rule which precludes the successful maintenance of totally inconsistent positions in the same litigation may also be implicated in this case. See Palm Beach Co. v. Palm Beach Estates, 110 Fla. 77, 89, 148 So. 544, 548-49 (1933); LaCoste v. LaCoste, 58 So.3d 404, (Fla. 1st DCA 2011) ("The trial court agreed with the former wife that the land became a marital asset when the former husband conveyed it to the parties jointly. Thus estoppel principles would preclude the former wife seeking reversal of the judgment on a legal basis wholly opposite to the one she advanced — and prevailed on — below. See Batie v. Batie, 31 So.3d 939, 940 (Fla. 1st DCA 2010), and cases cited therein.”).

. As the majority recounts, on September 22, 2002, seven-year-old Chase Fitchner received blood provided to the hospital by LifeSouth Community. Several weeks later he was diagnosed as having West Nile Virus Encephalitis. The act took effect September 15, 2003. Ch. 2003-416, §§ 86 & 87, at 4122, Laws of Fla. The estate timely filed suit against Life-South Community on April 23, 2004 — seven months after the effective date of the act. Moreover the statute of limitations for compliance with the new statute would not have run until the beginning of October 2004, leaving almost a year from the act’s effective date for compliance with its provisions.