455 So.2d 424 (1984)
STATE of Florida, Appellant,
v.
Eugene ELLISON, Appellee.
No. 83-275.
District Court of Appeal of Florida, Second District.
July 20, 1984.
As Corrected September 26, 1984.
*426 Jim Smith, Atty. Gen., Tallahassee, and Ann Garrison Paschall, Asst. Atty. Gen., Tampa, for appellant.
Jerry Hill, Public Defender, Bartow, and Allyn Giambalvo, Asst. Public Defender, Clearwater, for appellee.
DANAHY, Judge.
This appeal presents the question whether the trial court correctly ruled that the police officer did not have probable cause to initially seize a package from the defendant, Eugene Ellison, during a lawful vehicle stop. We hold that the trial court erred and therefore reverse.
The evidence presented at a suppression hearing is not in dispute. On August 2, 1982, at about 9:45 p.m., police officers Gary Hitchcox and Carolyn Ferguson were on routine patrol in the Jordan Park area of south St. Petersburg. Jordan Park is an area well known to the police department as a site frequently used for street-level narcotics transactions. Officer Hitchcox himself had participated in three drug-related arrests within the last six months in that area.
While on patrol, the two officers observed a vehicle without a taillight being driven by Ellison on a city street. The officers decided to make a traffic stop for this violation. Officer Hitchcox turned on the top lights of the patrol car, signalling Ellison to pull over. Ellison pulled over to the curb, stopped, and turned his engine off. Just as the patrol car was coming to a stop behind him, Ellison hurriedly exited his vehicle and started walking back toward the patrol car. Hitchcox immediately exited his patrol car and approached Ellison who, by this time, was fully illuminated by the headlights of the patrol car. When the two men met within two feet of each other, Hitchcox observed a rolled up, clear plastic baggie containing several flat, irregularshaped pieces of tinfoil which protruded two to three inches above the front waistband of Ellison's trousers.
Officer Hitchcox stated that police officers know that this packaging arrangement of tinfoil packets encased within a plastic baggie is consistent with the way narcotics are customarily packaged and sold, particularly in the Jordan Park area. Officer Hitchcox also stated that he felt certain he was dealing with a narcotics violation as soon as he saw this packaging arrangement. He based his conclusion on ten years' experience and training as a police officer. His experience included personal observation of over 1,000 tinfoil packets and twenty-five to thirty plastic baggie and tinfoil packet arrangements which were found to contain heroin or cocaine. Further, he had participated in some fifty arrests involving similarly packaged narcotics which had been seized from the waistband area of various suspects. Accordingly, without first communicating with either Ellison or Officer Ferguson, Officer Hitchcox reached out and removed the package from Ellison's waistband. The officers then took Ellison into custody.
At the police station, a presumptive test run on the contents of the encased tinfoil packets proved positive for heroin. Ellison was then formally arrested for possession of that narcotic. Incident to his arrest, Ellison was searched and a knife with a four-inch blade was found. Ellison was then also charged with carrying a concealed weapon.
At the outset of our analysis of the question presented, we note that there is no question of the propriety of the stop and the police encounter with Ellison. We also note that the motion to suppress and the trial judge's order concern only the initial *427 seizure of the package. The propriety of the search of the package after its seizure is not presented and we do not address it. Accordingly, the issue we must resolve is whether Officer Hitchcox's observation of the package, when coupled with certain other circumstances known to the officer at the time of the warrantless seizure, is sufficient to constitute probable cause to believe the package contained contraband.
Given the totality of the circumstances related by Officer Hitchcox, we conclude that he had probable cause to believe that the package contained narcotics. Our conclusion is reached after a study of applicable precedents of this and other courts which have discussed the conditions necessary to support a warrantless seizure under the plain view doctrine.
A law enforcement officer, in certain circumstances, may make a warrantless seizure of objects which are in plain view. In reviewing the plain view cases, we recognize that evidence is legally seized if:
1. The officer is in a place where he had a lawful right to be.
2. The officer inadvertently comes upon an object which is openly visible.
3. It is immediately apparent to the officer that the object constitutes evidence of a crime.
Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); see, e.g., Adoue v. State, 408 So.2d 567 (Fla. 1981); Ensor v. State, 403 So.2d 349 (Fla. 1981); Neary v. State, 384 So.2d 881 (Fla. 1980); Derrickson v. State, 399 So.2d 100 (Fla. 1st DCA 1981); State v. Melendez, 392 So.2d 587 (Fla. 4th DCA 1981); State v. Hall, 376 So.2d 276 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 637 (Fla. 1980).
Thus the plain view doctrine permits a law enforcement officer to seize incriminating evidence or contraband in plain view whether or not there is time to get a warrant if such contraband is inadvertently discovered during lawful police activity. Ensor.
There is little dispute that Officer Hitchcox's actions satisfied the first two prongs of the Coolidge test. First, Officer Hitchcox clearly was in a location where he had a right to be when he stopped Ellison for the observed traffic infraction. Thus the initial intrusion which afforded the view was lawful. Second, Officer Hitchcox inadvertently discovered the package when he saw it protruding from Ellison's waistband when Ellison approached him after the stop. Officer Hitchcox in no way violated Ellison's Fourth Amendment rights by merely looking at the package which Ellison exposed to his view. Under the plain view doctrine such evidence is deemed to be properly seized where it is so placed that it might be seen by an officer who is where he had a right to be. It cannot be said that Ellison had any reasonable expectation of privacy in the exposed package at this point. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); Albo v. State, 379 So.2d 648 (Fla. 1980); Bailey v. State, 319 So.2d 22 (Fla. 1975); Ensor; Hornblower v. State, 351 So.2d 716 (Fla. 1977); Derrickson; State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978).
Whether the third prong of the Coolidge test has been satisfied, i.e., here whether the incriminating nature of the contents of the package was "immediately apparent," is a more difficult question. Every warrantless intrusion must be justified by articulable facts which would have supported the issuance of a warrant based on probable cause. The test to determine the existence of such probable cause is whether "the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been [or is being] committed." Benefield v. State, 160 So.2d 706, 708 (Fla. 1964); Dixon v. State, 343 So.2d 1345 (Fla. 2d DCA 1977). See also Carr v. State, 353 So.2d 958 (Fla. 2d DCA 1978). "The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which a conviction must *428 be based." Wright v. State, 418 So.2d 1087, 1090 (Fla. 1st DCA 1982) (quoting Shriner v. State, 386 So.2d 525 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981)). Additionally, we note that permissible observations of a police officer and the observations of an average person making contact with an individual are not the same. Ensor. Accordingly, we continue to adhere to our announced position that an officer's actions will not be evaluated by whether an ordinary citizen would have reason to believe that the package contained contraband. Rather, the test focuses upon the experience and knowledge of the officer considered in the context of the situation existing at the time of the seizure. State v. Lynch, 378 So.2d 829 (Fla. 2d DCA 1979); Dixon. In essence, then, the totality of the circumstances, i.e., the whole picture, must be taken into account. Thus, while an ordinary citizen might not have reason to believe that Ellison's package contained contraband, when Officer Hitchcox saw the unique packaging arrangement, he knew what trained police officers know, i.e., that the package most likely contained narcotics. In formulating that belief, he was entitled to utilize his specialized knowledge gained from training, education and experience in investigating drug offenses and identifying unusual packets which commonly contain illicit substances, particularly in this area of the city known for its high incidence of drug trafficking. See Redding.
It is true that an officer's observation of the outer packaging of a suspected parcel, standing alone, is insufficient to constitute probable cause to believe the parcel contains contraband. Hansen v. State, 385 So.2d 1081 (Fla. 4th DCA), petition for rev. denied, 392 So.2d 1379 (Fla. 1980). Consequently, we have held that hand-rolled cigarettes alone may not be seized even though an experienced narcotics officer may suspect that they contain marijuana. Carr. Similarly, seizure of a plastic baggie ensconced in a shirt pocket is impermissible when the seizure is based solely on the officer's knowledge that marijuana is commonly carried in such containers. Harris v. State, 352 So.2d 1269 (Fla. 2d DCA 1977). See also Bailey. Likewise, a brown manila envelope, which could contain "any number of items," cannot be opened and investigated without a warrant where the officer had no reason to believe that it contained marijuana even though such envelopes are commonly used to carry small amounts of marijuana. Thompson v. State, 405 So.2d 501 (Fla. 2d DCA 1981). Accord Kelly v. State, 407 So.2d 1011 (Fla. 5th DCA 1981) (amber-colored prescription bottle); Hansen ("bundles" composed of a garbage bag, cardboard box, and briefcase). We do not disagree with these cases which hold that where the nature of the package observed is innocuous in and of itself and not readily indicative of its contents, the plain view doctrine cannot justify a warrantless seizure. That is so because such an observation gives rise to mere suspicion rather than probable cause to believe that the package contains contraband. To transform mere suspicion into a reasonable belief based on probable cause, the officer must articulate additional corroborating facts or circumstances. Absent these other supporting circumstances, there is no way that an officer could know that a particular packet contained contraband rather than some other material.
On the other hand, where there do exist other independent indicia of the illicit nature of the contents of an otherwise innocuous container which fortifies an officer's belief that there is contraband within the container, we believe that probable cause can be established. In several cases we have sustained such warrantless seizures of packages containing contraband. In Redding, we upheld the warrantless seizure of several small, flat tinfoil packets subsequently found to contain heroin. Our holding was based upon the officer's experience with drug offenses, his reliable knowledge that narcotics are customarily wrapped in small tinfoil packets, and the existence of certain other surrounding circumstances at the time of the seizure. These circumstances included the officer's awareness of the defendant's bizarre druginduced *429 behavior and the peculiar location of the tinfoil packets within the defendant's shoes as well as the likelihood that the drugs would be quickly disposed of upon reoccupancy and departure of the vehicle and driver. Similarly, we held in State v. Booker, 380 So.2d 1309 (Fla. 2d DCA 1980), that a police informant's observation of an envelope in defendant's possession containing numerous tinfoil packets commonly used to package heroin, and defendant's statement to the informant that he and his co-defendant had "boy" for sale  "boy" being a common street name for heroin  was sufficient to establish probable cause to arrest the two and to seize and search the envelope. Even more recently, in State v. Spence, 448 So.2d 599 (Fla. 2d DCA 1984), this court granted a petition for writ of certiorari upon a finding that, based on the totality of the circumstances and the experience, perception, and careful observation of the officers, probable cause was established to arrest defendant and seize the cigarettes. In Spence, the police officers had observed Spence hand rolling cigarettes and attempting to conceal her activity during a rock concert held at the Lakeland Civic Center. Additionally, the officers were fully experienced in the area of narcotics crimes, especially in connection with some ninety arrests for possession of marijuana at the civic center. In each of these cases, our own court found that the combination of these factors was sufficient.
Our position finds further support in Albo, wherein our supreme court approved a police officer's seizure from a mobile home of thirty-five to forty bales of marijuana wrapped in black plastic and burlap. The supreme court concluded that the officer had probable cause to believe that the bales contained illicit contraband:
In his two and one-half years of previous experience in undercover purchases and narcotics investigations, every bale he had ever purchased or seized had been packaged in an identical manner. Given his experience plus the defendant's failure to produce the vehicle's registration and the fact that the rear end of the motor home looked weighted down, the circumstances support [the police officer's] determination that the bales were marijuana.
Albo at 650. Thus it appears that in the cases which have upheld and approved container seizures, the surrounding circumstances beyond the officer's own experience with the container in question played an important role in determining the existence of probable cause.
As in Redding, Booker and Albo, it is apparent in this case that Officer Hitchcox's actions were based not only on his extensive experience with narcotics cases but also on the surrounding circumstances which existed at the time of the seizure. Admittedly, Ellison made no incriminating statements as in Booker, nor was his behavior such as to indicate he might be under the influence of drugs as in Redding. However, when Hitchcox observed the packaging arrangement in its peculiar location on Ellison's body, he was fully aware that he was in the Jordan Park area and that narcotics were customarily packaged and sold in exactly such packages in this area of the city. Hitchcox knew that this method of dealing drugs had become a recognized pattern in this area of the city. These crucial facts and corroborating circumstances were sufficient to establish probable cause for Hitchcox to believe that the unique packaging arrangement contained contraband. Once the probable cause requirement of the plain view doctrine was met, it was proper for Hitchcox to seize the package, and its contents could then be used in prosecution of the crime to which they related. Albo.
The defendant argues that the plastic baggie and the tinfoil packets were not subject to seizure because they are merely innocuous objects themselves and are commonly used to hold such legitimate items as food and gum. Based on the facts presented here, we do not agree. Instead, we think that Officer Hitchcox could and did reasonably conclude that he was not observing an innocuous object. In arriving at his conclusion, Officer Hitchcox was not *430 required to close his eyes to the scenario. This setting included the unique baggie-tinfoil packet configuration, its unusual location on Ellison's person, and the particular locale at which the incident occurred. When all these factors are considered, the potential uses to which Ellison suggests the package could be put do not, under the circumstances which existed at the time of his encounter with Officer Hitchcox, seem reasonable. In Blanding v. State, 446 So.2d 1135, 1137 (Fla. 3d DCA 1984), our sister court recently noted:
As with all borderline situations regarding probable cause, innocent explanations for the activity may be imagined. But the mere possibility of other interpretations would not suffice to diminish the reasonable likelihood of illegality appearing, from the circumstances, to prudent men possessing the knowledge and experience of the officers in the case at bar.
We think that reasoning applies here.
Because we have found that the seizure of the package under the circumstances present here was proper, we also find that the subsequent search and seizure of the knife found during the search of Ellison's person at the police station after his arrest was also valid. Dixon.
We cannot conclude our discussion without noting that other courts have had difficulty in determining the extent to which police officers may rely upon their experience and training to formulate probable cause to believe that an otherwise innocent object contains contraband, thus subjecting it to immediate seizure. In In the Interest of P.L.R., 435 So.2d 850 (Fla. 4th DCA 1983), the Fourth District recently considered a question similar to the one presented here. In that case the court sustained the trial court's denial of a motion to suppress. A police officer had arrested P.L.R. in an area known to the police as a heavy drug trafficking area. The officer had seen P.L.R. in the area before and noticed that he was wearing a sweatshirt with the left pocket bulging open, revealing a small manila envelope. The envelope was of the type commonly used in the area and known to the police officers as a container for "nickel bags" of marijuana. On that basis, the officer reached down and removed the envelope from P.L.R.'s pocket. After he smelled its contents and determined that the contents smelled like marijuana, the officer placed P.L.R. under arrest. The officer testified that he had seen such envelopes used to package marijuana in excess of 100 times and that it was the only way he had ever seen the envelopes used. On rehearing the district court certified that its decision was in conflict with the decisions of this court in Carr, Harris, and Thompson. In the Interest of P.L.R., 435 So.2d 850 (Fla. 4th DCA 1983) (opinion on rehearing). We respectfully disagree. Rather, we believe that these decisions are not in conflict and can be harmonized. Most significant is the fact that unlike P.L.R. and our own case of Redding which is cited as supporting authority in P.L.R., neither Carr, Harris, nor Thompson included additional surrounding circumstances beyond the officer's experience with the container. Therefore, as we held in Carr, Harris, and Thompson, no probable cause existed. Because this crucial factor distinguishes those three cases from P.L.R. and harmonizes them with Redding, we find no conflict requiring resolution.
The United States Supreme Court has had similar difficulty with this issue. In Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983),[1] a divided *431 court attempted to clarify the probable cause requirement of the "immediately apparent" prong of the Coolidge test. Justice Rehnquist, writing for the plurality, appears to define "immediately apparent" as merely requiring a showing that there was probable cause "to associate the property with criminal activity." 103 S.Ct. at 1540. The discussion takes special care to note that probable cause is a flexible, common sense approach which places great reliance on the officer's experience and on the law of probabilities. Thus, the existence of probable cause does not demand any showing that the police officer "know" that certain items are contraband or evidence of a crime. 103 S.Ct. at 1539-41. "Requiring the police to obtain a warrant once they have obtained a first-hand perception of contraband ... would be a needless inconvenience." 103 S.Ct. at 1541. The court then concluded that in view of the common use of balloons in packaging narcotics and the police officer's narcotics training and experience, the officer had probable cause to believe that the distinctive character of an opaque, inflated party balloon tied at the neck and observed in plain view in defendant's possession during a lawful vehicle stop immediately "announced" that it contained contraband. Although we are persuaded by the reasoning in Texas v. Brown, we do not believe that case has wrought a major change in the law. We think it does recognize the need to give credence to the beliefs of law enforcement officers as to the "practical, nontechnical" probability rather than an unduly high level of certainty that a given package in plain view contains contraband. We believe Texas v. Brown supports our conclusion.
Neither Texas v. Brown nor our own cases of Redding and Spence require that the officer know with certainty that the object to be seized is contraband. Similarly, we do not hold Officer Hitchcox to the unrealistically high standard of absolute certainty. Rather, we hold that Officer Hitchcox had ample probable cause based on his knowledge and experience and the surrounding circumstances to seize the contraband.
In view of the foregoing, the heroin and knife should not have been suppressed as evidence. Accordingly, we reverse the order and remand the case for further proceedings.
REVERSED AND REMANDED.
After we issued this opinion, we received the decision and opinion of the supreme court in In the Interest of P.L.R., 455 So.2d 363 (Fla. 1984). P.L.R. establishes the precedent and provides the controlling authority for our decision. Therefore, in cases like this, whether an experienced police officer at a known drug-transaction site has sufficient probable cause to believe that a particular container does contain narcotics will depend on the "totality of the circumstances" existing at the time. In pronouncing that rule the court found that P.L.R. was distinguishable from our cases of Thompson, Carr and Harris and was more like Albo and our Redding case. In our opinion we found those same distinctions and similarities. Thus, we believe that what we have said comports with the principles announced in P.L.R.
BOARDMAN, A.C.J., and OTT, J., concur.
NOTES
[1] The offense committed by Ellison occurred prior to the effective date of the amendment to Article I, Section 12, Florida Constitution. This amendment, which must be given prospective effect only, provides:

ARTICLE I
DECLARATION OF RIGHTS
SECTION 12. Searches and seizures  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.
[New language is underlined.]
See State v. Lavazzoli, 434 So.2d 321 (Fla. 1983); Copeland v. State, 435 So.2d 842 (Fla. 2d DCA), petition for rev. denied, 443 So.2d 980 (Fla. 1983).