577 So.2d 1372 (1991)
Thomas Maurice BRYANT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-2578.
District Court of Appeal of Florida, First District.
April 9, 1991.
*1373 Nancy Daniels, Public Defender; Phil Patterson, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Bradley Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellant plead nolo contendere to a charge of possession of cocaine, reserving his right to appeal the trial court's denial of his motion to suppress cocaine seized from his person by the arresting law enforcement officer. Appellant contends that the seizure of the contraband was the product of an unlawful detention, and was made without probable cause in violation of the Fourth Amendment, United States Constitution, and Article I, section 12, Florida Constitution. Finding no abuse of discretion in the trial court's denial of the motion to suppress, we affirm.
The facts, as revealed by the testimony of Officer Riley, disclosed that around 10:00 A.M. on the morning of the arrest, he was patrolling an area well-known for drug violation when he noticed a group of seven or eight men congregated in front of an abandoned house. He parked his patrol car and maneuvered himself undetected to within five feet of the group. He testified that the individuals he observed were talking about drug transactions, and watching the people passing by in cars who were suspected drug buyers. The discussions included crack cocaine and some type of marijuana. After listening for a short time, Riley made his presence known to the men, whereupon as he described it:
[T]hey all started fidgeting around, walking around as though they wanted to leave the area hurriedly. .. . They were saying "search me, search me, I have no drugs on me." ... They were all dressed in heavy clothing, coats, etc. The pockets seemed to have something in them  seemed to be full. So, just for precaution, we usually, any time we are approaching an area where there is [sic] people suspected of doing any wrongdoing, we do a frisk for weapons.... Before I got to the defendant, the defendant  I was talking to the other people, frisking them first. The defendant kept walking around, placing his hands in and out of his pockets. He walked towards the rear of the group and, at that point, I approached him. And before I could start any type of frisk of him, I observed the paper  there was a small brown paper tearing in his right coat pocket area.
Asked to describe the paper, Riley stated that it was like paper torn from a grocery sack, and that he had often encountered in that area small brown paper bags, pieces of bags or small match boxes containing drugs or drug paraphernalia. Officer Riley immediately assumed there were drugs in the paper; however, he could not remember whether he retrieved the paper from appellant's pocket, or whether appellant gave it to him. In any event, inside the brown paper he found two pieces of crack cocaine.
For his part, appellant testified that he was looking for someone to help him wash his car, and that as a joke he picked up the paper from the ground where he had seen one of the men put it. He also testified *1374 that he did not know what was in the paper, "but I had an idea," and that "I kept moving around and he came back to me because I was trying to get the piece of paper out of my pocket."
Defense counsel argued below that the detention was more than an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), since the officer intended to routinely frisk the men for evidence of a crime, which action could be justified only by probable cause to believe a crime was being committed. Alternatively, it was argued that if the detention was a valid Terry investigatory stop, it was unlawful because not based upon a founded suspicion that appellant was engaged in some criminal activity. He contended that in either case, the seizure was the product of an illegal detention, and that even if the detention was justified, the officer's observation of a brown piece of paper protruding from appellant's pocket did not constitute probable cause to believe it contained evidence of a crime.
The state, in response, argued that the stop was lawful under Terry because it was in a high-crime area which the officer had been working for the past year; that he heard the men discussing how they conducted drug transactions, and that when he approached them, they became nervous and evasive in their actions. It was also pointed out that the officer did not frisk appellant, but saw the paper in plain view, and that the officer had a right to be where he was, and inadvertently gained sight of the paper. Further, the state argued, it became immediately apparent to the officer, given his knowledge and experience, that the paper contained evidence of a crime.
The trial court accepted the argument of the state, concluding that although the evidence that the men were talking about drugs, "in and of itself," would not be significant, it was under the circumstances which included the fact that the men were in an area known for drug transactions; and that given the knowledge and experience of the officer, when he saw the brown paper protruding from appellant's pocket, he had reasonable grounds to believe that the paper contained contraband. He therefore denied the motion to suppress.
We first determine that the "stop," if one occurred,[1] was not unlawful. Under section 901.151, an officer must have an articulable suspicion (a reasonable or founded suspicion), that a person has committed, is committing, or is about to commit a crime before he may lawfully detain him. A founded suspicion is one which has a factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge and experience. Factors to be considered in deciding whether there was a founded suspicion for a stop are the time, the day, the location, the physical appearance of the suspect, the behavior of the suspect, and anything unusual in the situation as interpreted in light of the officer's knowledge. Hooper v. State, 440 So.2d 525 (Fla. 1st DCA 1983), citing State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978). Under the criteria mentioned, we find that the trial court's determination that the officer possessed the requisite articulable suspicion was within the discretion afforded the trial court in ruling on motions to suppress, and we find no error in this ruling.
Whether the seizure of the contraband from Bryant's pocket was lawful is another matter. Assuming that the officer seized the contraband from Bryant's pocket, although he was uncertain on this point, the seizure could be lawful only if the officer had probable cause to believe that the item seized contained evidence of a crime. The existence of probable cause must be determined from the "totality of the circumstances," focusing upon the *1375 facts existing at the time of the seizure as viewed in the light of the officer's knowledge and experience. In formulating his belief that a package contains contraband, the officer is entitled to use his knowledge gained from training, education and experience in investigating drug offenses and identifying packages which commonly contain unlawful substances, particularly in an area of the city known for its high incidence of drug trafficking. See State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984); State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978).
Under the "totality of the circumstances" test, the trial court in determining probable cause was allowed to consider the location; the people involved and the activities taking place; their actions upon discovering the presence of the law enforcement officers; and the observation by the officer of brown paper protruding from appellant's pocket, the paper being of a type recognized by Officer Riley as the type of paper commonly used to package contraband; and, if the trial court accepted it, appellant's own testimony that he was attempting to remove the piece of paper from his pocket when observed and apprehended by the officer.
Prior case law justifies the seizure of the contraband under the circumstances described. In P.L.R. v. State, 455 So.2d 363 (Fla. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985), the officer's observation of a small manila envelope of a type commonly used for carrying contraband, in the pocket of the defendant at a known drug transaction site, was found to provide probable cause to arrest and search the defendant. In State v. Ellison, supra, an officer was allowed to consider that the area was a place frequently used for narcotics transactions, and that drugs were customarily packaged and sold in plastic bags containing tin foil packages. And in State v. Casey, 528 So.2d 1264 (Fla. 1st DCA 1988), this court approved a finding of probable cause where the officer seized a plastic bag which he saw protruding from the defendant's pocket, in an area known for drug transactions, where the defendant was visibly nervous and quickly shoved the plastic bag into a pocket. See also, Cross v. State, supra (footnote 1), in which the court held that once police officers discovered a round-shaped, taped object in a suspect's tote bag (which had been opened with consent), the officers had probable cause to believe the suspect was carrying contraband based on their experience of seeing cocaine similarly packaged on many prior occasions.
Under our standard of review, which is to determine whether the trial court abused its discretion in determining that the stop was not unlawful and that probable cause existed for the seizure of the cocaine, we must affirm. The findings of the trial judge based upon the facts before him should be overturned only when there is a clear abuse of discretion.
In his second issue, appellant contends that the trial court abused its discretion in imposing conditions on appellant's probation by imposing costs without affording proper notice; by unlawfully delegating authority to the probation officer to direct appellant's alcohol counselling and treatment; and by requiring him to work full-time. We affirm the work requirement without further discussion. As to the imposition of costs, we affirm on the authority of Bull v. State, 548 So.2d 1103 (Fla. 1989), and Rhodes v. State, 566 So.2d 593 (Fla. 1st DCA 1990), and certify the question on the notice requirement for imposition of costs as we did in Rhodes.
We find error with respect to the probation condition relating to alcohol counseling and treatment. This condition, which is part of a printed set of alternative conditions attached to the standard order, provides as follows:
You are to undergo alcohol abuse screening and if deemed necessary, immediately become involved in and satisfactorily complete alcohol abuse counseling/or treatment as directed by the Probation Officer.
*1376 The transcript of the sentencing hearing reveals that the above condition of probation does not conform to the trial court's oral pronouncement. At sentencing, the court stated:
Special conditions of probation, you will have drug screening, and if required, that you have counseling and random urinalysis.
Since the written order of probation does not conform to the trial court's oral pronouncement of conditions, reversal is required. Gardner v. State, 569 So.2d 532 (Fla. 1st DCA 1990). Because the special condition of probation as announced by the trial court at sentencing does not provide for "treatment as directed by the probation officer," as in the written order, we do not reach the issue of the trial court's delegation of discretion to the probation officer to order treatment. However, with respect to the discretion delegated to a probation officer to supervise counseling, or other conditions aimed at rehabilitation, we would refer the trial court and counsel to Larson v. State, 572 So.2d 1368 (Fla. 1991).
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
SHIVERS, C.J., concurs.
BARFIELD, J., dissents with opinion.
BARFIELD, Judge, dissenting.
In my judgment the trial judge abused his discretion in failing to suppress the evidence in this case. The officer was not justified in conducting a stop and weapons search of a man standing in a group in public at 10 o'clock in the morning listening to one man talk about techniques for distributing drugs to passing motorists.
NOTES
[1] The officer's initial contact with appellant and his companions appears in fact to be nothing more than a "police-citizen encounter." Cross v. State, 560 So.2d 228 (Fla. 1991), citing Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).