SMITH, Judge,
dissenting.
The facts of this case are undisputed. Detectives Smith and Fussell, while patrolling a high crime area where they knew crack cocaine was sold on a regular basis, observed the appellee and some other men gathered at a specific place, near Grady’s Cafe, where those selling would often wait to sell crack cocaine to passersby. The vehicle in which the officers were riding, although unmarked, was nevertheless known to a lot of people in the area. As the officers turned the corner the men near the cafe dispersed and began walking in different directions. As the appellee walked in the direction of the officers, De *313 tective Smith noticed that appellee was carrying a wadded-up piece of brown paper sack, recognized by both officers as the most common way they had seen small amounts of crack cocaine packaged. Both officers had previously made arrests and seizures of similar packages, and had never found anything except crack cocaine in the pieces of brown paper. The detectives approached the appellee, but he ignored their attempts to talk with him. Instead, appel-lee kept walking until he reached a pay telephone booth located beside a nearby grocery store, where he inserted coins in the telephone and began making a call. Detective Smith told appellee he would like to talk with him. Smith could see that appellee, who was shaking badly and appeared “very nervous,” was still clutching the crumpled brown paper in his hand.
Upon being asked several times by the detective to show them what was in his hand, appellee each time would reach into his pocket, pull out something, and place it on the phone booth shelf, while the brown paper remained in his hand. After emptying both pockets, appellee placed his hand holding the paper into his pocket, then his hand came out empty. At that point, believing that the brown paper contained cocaine and that appellee was about to run, Smith instructed Detective Fussell to retrieve the paper from appellee’s pocket. He did so, and the paper’s contents proved to be cocaine.
Detective Smith had a total of eleven years of experience, two and one-half years of which was with the special investigations unit. Detective Fussell, an officer with four years experience, testified that he was ninety-nine percent certain that the brown paper contained some amount of crack cocaine.
I am of the view that the result reached by the majority is irreconcilable with our decision in State v. Casey, 528 So.2d 1264 (Fla. 1st DCA 1988).[1] In Casey, an officer was patrolling in an area known by police to be commonly used for narcotics transactions. Although he was in plain clothes, the defendant knew him; and as the officer approached defendant, his two companions ran away, and defendant, appearing startled, tried to quickly place a plastic bag into his pocket. The officer could see about two inches of the bag protruding from the defendant’s pocket. He testified that, based on his experience, plastic bags are the most common way to package narcotics, and that it was very common for individuals carrying narcotics, upon being approached in the area, to attempt to run away, destroy the evidence, or to discard it as they run. Crack cocaine found on a subsequent search of the defendant’s pockets was suppressed by the trial court. This court, reversing, set forth the following basis for its decision:
Under the totality of the circumstances, Officer Stoll had sufficient probable cause to seize the plastic bag and arrest appellee. The fact that the plastic bag protruding from appellee’s pocket was innocuous of itself is not dispositive. P.L.R. v. State, 455 So.2d 363 (Fla.1984) cert. denied 469 U.S. 1220, 105 S.Ct. 1206, 84 L.Ed.2d 349 (1985). An innocuous item in plain view can be seized if additional circumstances are present which provide sufficient probable cause to believe that it contains contraband. State v. Ellison, 455 So.2d 424, 428-429 (Fla. 2d DCA 1984). Officer Stoll’s knowledge and experience must be considered in the context of the situation as it existed at the time. Id. at 430-431. In the instant case appellee was observed in an area known for a high incidence of narcotic transactions. When Officer Stoll approached appellee, appellee appeared very startled and his two companions fled. Officer Stoll observed appellee quickly shove an item into his pocket, and saw two inches of a plastic bag protruding from appellee’s pocket. Based on his knowledge and experience, Officer Stoll knew that the area was commonly used for narcotic transactions, that participants in such transactions commonly *314 flee from approaching officers and discard the narcotics, and that narcotics are commonly packaged in plastic bags. Under P.L.R. v. State, these circumstances provided sufficient probable cause to search appellee and seize the bag, despite Officer Stoll’s inability to observe its contents. The subsequent arrest and search incident to arrest were therefore proper, and the cocaine and paraphernalia recovered should not have been suppressed.
528 So.2d at 1265-66.
I find the reasoning and authorities cited in the Casey opinion equally applicable here.[2] See also, Bryant v. State, 577 So.2d 1372 (Fla. 1st DCA 1991). In Bryant the defendant, with a group of seven or eight men in an area known for drug violations, approached by officer who overheard discussions about drug transactions, kept walking around and placing hands in and out of his pockets. The officer observed, and then seized, a small brown paper “tearing” in defendant’s coat pocket which the officer recognized as a commonly used container for drugs or drug paraphernalia. In affirming the trial court’s ruling denying, suppression, this court stated, after concluding that the initial detention was not unlawful:
Whether the seizure of the contraband from Bryant’s pocket was lawful is another matter. Assuming that the officer seized the contraband from Bryant’s pocket, although he was uncertain on this point, the seizure could be lawful only if the officer had probable cause to believe that the item seized contained evidence of a crime. The existence of probable cause must be determined from the “totality of the circumstances,” focusing upon the facts existing at the time of the seizure as viewed in the light of the officer’s knowledge and experience. In formulating his belief that a package contains contraband, the officer is entitled to use his knowledge gained from training, education and experience in investigating drug offenses and identifying packages which commonly contain unlawful substances, particularly in an area of the city known for its high incidence of drug trafficking. See State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984); State v. Redding, 362 So.2d 170 (Fla. 2d DCA 1978).
577 So.2d at 1374-75.[3]
The trial judge in the case before us, although candidly observing that he could go so far as to characterize the officers’ actions as “good police work,” nevertheless concluded, particularly in view of the decisions in Wallace v. State, 442 So.2d 1066 (Fla. 1st DCA 1983), rev. denied, 450 So.2d 489 (Fla.1984), and Johnson v. State, 565 So.2d 413 (Fla. 3d DCA 1990), that the officers did not have probable cause to believe that appellant was in possession of contraband.[4]
I do not believe that either Wallace or Johnson offer reliable guidance under the facts presented here, and in my opinion, these cases do not justify the trial court’s action in suppressing the evidence seized by the officers. The issue in Wallace was whether an affidavit for a search warrant was sufficient to establish probable cause. The affidavit was based upon information given by an informant, and not upon personal observations by a trained police officer, as here. While the informant in Wallace was alleged to be reliable, information provided by an informant is not entitled to the deference accorded to observations of a trained police officer.[5] The evidence in *315 Johnson was similarly deficient, in that, although the seizure was based upon an officer’s personal observations, the officer simply saw the suspect pass “an unrecognizable item” in exchange for money; and there was no testimony that the container (a matchbox) subsequently seized from the suspect was of the kind commonly used for packaging cocaine.
Thus, in view of the trial court’s reliance upon non-dispositive case law, and in view of the court’s apparent failure to consider what appear to be controlling decisions, I would respectfully disagree with the ruling of the court below, as a matter of law.[6]
I therefore dissent, and would reverse the order suppressing evidence.

. It does not appear from the record of the suppression hearing that the Casey decision was brought to the attention of the trial judge.

. Appellee attempts to distinguish Casey solely on the fact that the Casey arrest occurred at 10:00 P.M., whereas, the arrest in the present case took place at approximately 7:30 P.M., which during the early days of August, is still daylight.

. The order under review in the present case was rendered prior to our decision in Bryant, and thus the trial court had no opportunity to consider that decision in making his ruling.

. With respect to the validity of the stop or detention, the trial judge observed only that he did not believe the question of whether the detention was valid "is really a significant issue in this case.”

. See, State v. Ellison, 455 So.2d at 428 ("... an officer’s actions will not be evaluated by whether an ordinary citizen would have reason to believe that the package contained contraband. Rather, the test focuses upon the experience and knowledge of the officer considered in the con *315 text of the situation existing at the time of the seizure”).

. This court very recently, in Harris v. State, 590 So.2d 551 (Fla. 1st DCA 1991), affirmed denial of a motion to suppress on facts very similar to those in this case.