610 So.2d 1314 (1992)
L.M., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 92-1124.
District Court of Appeal of Florida, First District.
December 22, 1992.
Louis O. Frost, Public Defender, and Ward L. Metzger, Juvenile Court Coordinator, Office of the Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., and Wendy S. Morris, Asst. Atty. Gen., Tallahassee, for appellee.
*1315 ZEHMER, Judge.
L.M., a child, appeals an order of disposition based on his commission of a delinquent act. He contends that the condition of community control requiring him to obey all lawful and reasonable demands of his mother, including participation in church youth programs, is unlawful. We do not agree and affirm.
In December 1990, L.M., then age 13, was charged with petit theft and burglary. He entered pleas of guilty to the petit theft charge and guilty to the lesser offense of trespassing in the burglary case. The trial court ordered a predisposition investigation prior to sentencing. The resulting predisposition report included information related by L.M.'s mother to the delinquency case management counselor. She stated that she had been having problems with L.M. for several years. L.M. would not listen or do as he was told. She often has disciplined L.M., usually by placing him on restriction. She had quit her night job because L.M. would not stay at home and she felt he was too old for a baby sitter. She has assigned L.M. household responsibilities, but he would not perform them. L.M. has gotten along well with members of the community, and they have enjoyed family picnics and barbecues. They are affiliated with the New Friendship Baptist Church. She works for the Duval County School Board and has a modest annual income. She has received no income from L.M.'s father, who has not seen L.M. since the boy was 3 years old. L.M. has made poor grades in school (receiving all F's during the first two grading quarters of the 7th grade), and often has been referred to the Dean's office for disciplinary problems. He has not done his homework, has used profanity toward his teachers, has been in fights, has lied, and often has been suspended. L.M.'s mother did not suspect alcohol or drug usage, however. She indicated that commitment may be what her son needs to show him "he is headed down the wrong path." The report also reflected that L.M. was previously charged with arson, retail theft, and petit larceny; adjudication was withheld in the arson and retail theft cases, and he was referred to JASP; he was adjudicated delinquent in the petit larceny case and placed on HRS-supervised community control. The counselor's report concluded by stating that L.M. was showing signs of ungovernable behavior, and "unless firm actions are imposed, his mother will probably lose control."
At the disposition hearing on February 20, 1991, the trial court noted that the mother was affiliated with New Friendship Baptist Church and asked her whether L.M. was affiliated or involved in any youth or other church programs. She replied that he was not. Later in the hearing, the following colloquy occurred:
THE COURT: Is there any program at your church that is there, a youth program at your church?
THE MOTHER: Yes, it is but he doesn't want to go.
THE COURT: Okay. All right. I'm going to  I'm going to adjudicate him to be delinquent; I'm going to commit him to level 2; I'm going to require that he go to the JMI program and successfully complete it. And I want  I'm serious about that if he's not  if he's messing up I want him to be violated; okay? If you mess up I'm going to put you either in the Stop-Step or in training school. Do you understand that?
THE CHILD: Yes, sir.
THE COURT: Probably training school because I'll be pretty disappointed by that time. Also, I'm going to require that he enroll in and that he successfully participate in any and all youth programs they have at your church. I want you to get with the pastor.
The trial court entered written orders of adjudication and commitment, and specified as a condition of community control that L.M. "obey all lawful and reasonable demands of guardian and assigned counselor" and "mother shall enroll child in youth programs at church."
L.M. appealed the validity of the community control condition that L.M. "get with the pastor" of his mother's church and enroll in any and all of its youth programs. We held this condition invalid because it *1316 required a community controllee to submit to a course of religious instruction in contravention of the First Amendment. In the Interest of L.M. v. State, 587 So.2d 648 (Fla. 1st DCA 1991). We explained that this condition unlawfully "delegate[d] to the pastor of a church the judicial function of determining those programs best suited to meet [L.M.'s] rehabilitation needs." Id. at 649. The opinion further stated, however, that on remand the trial court could impose alternate conditions of community control, including the requirement that L.M. attend youth programs of secular content.
In the meantime, L.M. had committed another act of delinquency, and a consolidated hearing was held in the remanded case with the new prosecution on a charge of loitering and prowling. L.M. pleaded guilty to this new charge and the following colloquy took place:
THE COURT: Ma'am, are you still affiliated with the New Friendship Baptist Church?
THE MOTHER: Yes.
THE COURT: And I believe  I don't remember exactly what happened. Way back when I sentenced him, I ordered him to participate in youth programs at that church.
THE MOTHER: Uh-huh.
THE COURT: And did you want him to do that back then?
THE MOTHER: Yes.
THE COURT: All right. I guess a lot of water has gone under the bridge since then and he's been picked up for some new crimes as well.
At that point, the court realized that L.M.'s term of community control for the previous cases had already expired. The attorneys agreed that the court need not amend those sentences on remand, and that the court need only sentence L.M. for the new offense. The hearing continued:
THE COURT: ... I'm going to place him  I'm going to adjudicate him delinquent, place him on community control. Now, these are the conditions of your community control. Number one, you must perform forty-five hours  this is a second degree?
MS. STEELY [L.M.'s ATTORNEY]: Yes, sir.
THE COURT: Forty-five hours of community service within the next forty-five days. Number two, you must obey all reasonable rules of your mother and your HRS counselor. Do you understand, sir?
THE CHILD: Yes, sir.
THE COURT: Number three, you must  you're under a curfew  how old are you?
THE CHILD: Fourteen.
THE COURT: You're under a curfew of 7:00 o'clock every evening. You must be back in the home by 7:00 o'clock every evening. Do you understand, sir?
THE CHILD: Yes, sir.
THE COURT: There's no roaming the streets and the only exception is for school or church activities or if you're somewhere with you[r] mother. Do you understand, sir?
THE CHILD: Yes, sir.
THE COURT: Now, also, I'm going to require  I'm going to try this a little bit different this time. I'm going to require that you obey all the reasonable demands of your parent including participating in community or church programs to be chosen by your mother. Do you understand that, sir?
THE CHILD: Yes, sir.
THE COURT: And I'll put the exact wording in the order. Is there any other request from the State or the defense?
MR. METZGER [Co-Counsel for L.M.]: Are you referring specifically to church youth programs that are of a secular content?
THE COURT: My order is going to read just the way I stated it. So, if you all want to appeal it, that's fine. That will be up to the mother what programs he attends. Also, I would allow them to use the time that he puts into those youth programs as community service. That can count as credit for his community service hours. All right. Is [sic] there any other requests  did I say obey *1317 all the reasonable rules of your mother and your HRS counselor and obey all laws. Any other requests from the State or defense?
MR. METZGER: We're going to object at this point to the condition that he attend youth programs whether through the church or not, as directed by his mother. Frankly, I think that violates the order that the District Court of Appeals has entered in his other cases. One of the things they say in that opinion and I'll quote from it is, "The condition is also erroneous in that it delegates to the pastor of the church the judicial function of determining those programs best for the child suited to meet Appellant's Rehabilitation needs. See Singleton vs. State." That's error. What you did is exactly one of the things that they point out in the other case, is allowing someone else to determine what particular programs it is that he would be involved with.
The second problem with it is now that you're providing that he go to a program that his mother picks, his mother may pick a program at the church. She would therefore be supported by the Court in requiring him to attend that because he can be violated if he chooses not to attend. We have no indication that the programs that the mother may pick will have a nonreligious nature. They must be secular in nature. That's one of the things that the L.M. decision says, you can't order somebody into programs that have religious content to them. You violated what the DCA has already reversed you on.
THE COURT: Well, this is quite a different order here and what I'm saying is the parent can choose and I think there is a presumption under the Florida law that the parent does have control over their child while he is a minor. I'm not delegating to a church official. I'm delegating to the mother who already has the control over her son to begin with. So, this is the order and you all are welcome to appeal it.
The written order of disposition entered pursuant to this hearing contains the following condition: "Obey all lawful and reasonable demands of the mother, including, but not limited to participation in civic, school, church and/or community youth programs, if the mother directs." The order further requires the mother to report any violations of the conditions of community control to the assigned HRS counselor.
On this appeal, L.M. challenges the validity of the quoted condition on three grounds.
L.M. first argues that the terms of the oral pronouncement are inconsistent with the written order and, thus, the literal language of the oral pronouncement is controlling, citing Bryant v. State, 577 So.2d 1372, 1375-76 (Fla. 1st DCA 1991), and Gardner v. State, 569 So.2d 532 (Fla. 1st DCA 1990). We acknowledge the stated rule that the written order must conform to the oral pronouncements, but find that rule inapplicable in this case because we discern no substantial difference between the oral pronouncement and the written condition. In his oral pronouncement the judge stated that the "exact wording" would be set forth in the written order. The only difference between the wording of the oral pronouncement and the written order is the addition the words "lawful and reasonable" in describing the demands of the mother. These added words only state that which the law necessarily would imply whether explicitly set forth or not, because the court obviously could not predicate a violation for L.M.'s refusal to obey an unlawful or unreasonable instruction or demand by his mother. The wording of the written order clearly carries out the court's stated intention and substantially conforms to the oral pronouncement.
L.M. next argues that the questioned condition must be reversed because it amounts to an improper delegation of judicial authority to L.M.'s mother to determine what particular youth programs or activities L.M. will be required to attend. In support of this argument he cites M.A.R. v. State, 433 So.2d 29, 30 (Fla. 5th DCA), pet. for rev. denied, 441 So.2d 632 (Fla. 1983) (condition of probation "to make *1318 restitution for the damages to the vehicle `under terms and conditions specified by H.R.S.'" held erroneous delegation of authority); Singleton v. State, 582 So.2d 657, 658 (Fla. 1st DCA 1991) (error to delegate to probation officer authority to determine whether defendant "`will seek evaluation and treatment under the sexual offender program'"); and L.M. v. State, 587 So.2d 648 (error to delegate to pastor of church authority to direct probationer to enroll in religious youth program).
We note that neither these cases, nor any of the additional cases cited in L.M.'s reply brief, involve an issue of unlawful delegation of judicial authority to a child's parent incident to a specific condition of community control. As the trial judge did below, and as the state now argues to us, we perceive a significant difference between, on the one hand, the matter of delegating judicial authority to a probation officer by requiring obedience to the officer's lawful demands to participate in a particular program, and on the other hand, requiring a delinquent child to obey parental directions, which may include the child's participation in church youth programs or activities. In the first case, the court must specify which programs the child is to attend. In the latter case, the court has not specified participation in any particular program, but leaves that matter to the discretion of the parents as natural guardians having custody of the child.
In this case it is readily apparent that the court, HRS, and the mother are concerned that this young boy be made to interact with society in a manner that will teach him acceptable social and moral values before his antisocial attitude and conduct mold him into a hardened criminal. The court is attempting to accomplish this by not placing the child in a secured environment void of parental love and care. Rather, the court has recognized that the mother is the natural guardian of L.M., and has left L.M. in her custody and control rather than placing him in the custody of HRS. As natural guardian, L.M.'s mother has the legal authority to direct that he participate or not participate in various youth programs or activities in accordance with her legal obligation to do those things that are in the child's best interests. Thus, it is neither unreasonable nor illegal for the court to require L.M. to obey the "lawful and reasonable" demands of his mother in respect to his daily activities. None of the cases cited to us deals with the validity of a condition requiring a delinquent child to obey the reasonable and lawful directions of his parents, and we are aware of no statute or case law that would make such a condition invalid.
We hold, therefore, that the condition of community control in question does not constitute an unlawful delegation of judicial authority to the mother. Whether the mother's demand or direction to L.M. on a particular occasion is lawful and reasonable, such that it would support a violation of this condition should L.M. refuse to obey his mother, is a matter that can be determined only if and when a dispute arises between L.M. and his mother that leads to a charge of violation of this condition.
Our conclusion on the second point leads directly to L.M.'s third point  that the stated condition of probation requires L.M.'s participation in church programs chosen by his mother and thus violates L.M.'s rights under the First Amendment to the United States Constitution and article I, section 3, of the Florida Constitution relating to the free exercise of religion and precluding the state's power to require participation in any particular religion. He argues that this condition directly violates our decision in L.M.'s previous appeal. We disagree for the following reasons.
Inherent in parents' authority and control over their unemancipated child living in the parents' household is parents' right to require that their child attend church with them as part of the child's religious and moral training. However, to what extent a court can or should have authority to enforce parental directions when the child refuses to obey presents significant issues that need not be decided on this record. It is plainly evident from our previous decision involving L.M. that the court cannot direct L.M. to attend a particular church or *1319 participate in specified religious instruction. L.M., 587 So.2d 648. But we also recognized in that case that the court could require L.M. to attend youth programs of secular content. 587 So.2d at 649. We take note that some church youth programs are of predominantly secular content with only incidental, if any, reference to religious instruction and practice. For example, churches often sponsor and actively support boy scout troops in which children participate whether or not they are members of that particular church. We find it hard to conceive that compulsory participation in such program would offend the First Amendment or any other provision of law. On the other hand, some church youth programs predominately emphasize religious instruction and practice, and clearly the court is not empowered to compel a child to participate in such programs.
Whether youth programs where L.M. and his mother attend church will involve predominantly religious instruction and practice, or will be predominantly of secular content is an issue that can only be determined if and when a dispute over the validity of a particular direction or demand arises. Therefore, it is premature at this stage and on this record to hold in the abstract the entire condition is unlawful and must be stricken. We conclude that it is more consistent with public policy and the law governing parental authority over their unemancipated child that a condition of community control requiring obedience to reasonable and lawful demand of a parent by an unemancipated child left in the custody of that parent be treated as presumptively valid. Determination of whether the child's refusal to obey a particular parental demand will support intervention by the court for a violation of this condition should be made only after a hearing at which all facts relevant and material to the nature of the demand and the child's conduct in response can be established and considered.
AFFIRMED.
SHIVERS, J., concurs.
ALLEN, J., dissents with opinion.
ALLEN, Judge, dissenting.
I respectfully dissent. I fully agree with the majority's assessment of the trial judge's motives. He wants this child to learn to interact with society in a socially and morally acceptable manner. The problem with the method he has chosen, however, is that it contravenes the First Amendment because it uses the coercive influence of the state to compel religious instruction. I see the trial judge's order as simply a game of semantics to accomplish the very result which was disapproved in In the Interest of L.M. v. State, 587 So.2d 648 (Fla. 1st DCA 1991). As the trial judge put it, "I'm going to try this a little bit different this time." And when he was asked to limit the application of the condition of community control to secular church youth programs as specifically required by the decision in L.M., he declined, saying, "My order is going to read just the way I stated it." I would strike the condition of community control.